[No. 26906. Department Two. March 1, 1938.]

H. W. Brougham, *Appellant,* v. The City of Seattle, *Respondent.*[1]

*Vanderveer & Bassett,* for appellant.

*A. C. Van Soelen* and *C. V. Hoard,* for respondent.

[1]Reported in 76 P. (2d) 1013.

BLAKE, J.—Article IX (§§ 78 to 86, inclusive) of the traffic ordinance (No. 64692) of the city of Seattle sets up a comprehensive plan of impounding vehicles left on the streets in violation of the provisions of the ordinance. By § 78, the chief of police is authorized to designate in writing, filed with the city comptroller, "approved storage garages . . . as vehicle pounds to which vehicles may be removed . . ." Section 79 provides that no garage shall be designated as a vehicle pound until the owner shall have posted a surety company bond in the sum of $2,500, conditioned that he will faithfully perform his duties as bailee of impounded vehicles, and that he will indemnify the owners for injury to such vehicles. Section 81, among other things, provides that, within forty-eight hours after a vehicle is impounded, the chief of police shall notify the owner in writing. It is further provided that, if the owner be unknown, the chief of police shall publish notice of the impounding in the official newspaper of the city. Section 83 provides:

"Before the said owner or his agent shall be permitted to remove a vehicle from such pound he shall:

" (a) Furnish satisfactory evidence to the Chief of Police and the operator of the garage in which the vehicle is impounded of his identity and ownership or agency.

" (b) Pay to the Chief of Police, who shall issue a receipt therefor, the sum of Two and 50/100 Dollars ($2.50) for towing or hauling, and storage charges not exceeding Twenty-five cents ($.25) per day for each day impounded.

" (c) Present the receipt of the Chief of Police to the operator of said garage.

" (d) Sign a written receipt of said vehicle."

Section 84 provides that if, at the expiration of sixty days after the mailing or publishing of notice, as required by § 81, the vehicle is not redeemed, *"the chief of police shall proceed to sell the same at public auc-*

*tion."* The section contains directions for notice of sale, and directs: *"If he* [chief of police] *sell such vehicle at such sale he shall pay the proceeds thereof into the city treasury."*

Section 85 provides that not only the proceeds from the sale of impounded vehicles be paid into the city treasury by the chief of police, but also all moneys paid to him for the *release* of impounded vehicles.

Section 86 provides:

"The owner or operator of any garage authorized to receive and keep impounded vehicles shall on or before the 10th day of each month file his claim with the City Council for towing and impounding charges, not exceeding those herein fixed, accruing to him upon vehicles *redeemed or sold, as herein provided, during the preceding month* in accordance with the provisions of this code, which claim shall be sworn to by him under oath as being accurate and justly due, and shall be personally approved in writing on the face thereof by the Chief of Police."

Pursuant to § 78, the chief of police designated plaintiff's garage as a vehicle pound. In compliance with § 79, plaintiff filed a bond, and on August 15, 1934, entered into a contract with the chief of police, which contained the following provision:

"Storage and towing charges will be collected and disbursed in accordance with the provisions of article IX of Ordinance No. 64692."

This provision was honored more in the breach than in the observance. For no storage or towing charges were collected or disbursed as provided in the ordinance. The chief of police held no sales as directed by § 84. The plaintiff filed no claims as required by § 86. The reason for this is that the chief of police and the plaintiff adopted a plan in regard to the redemption of cars that was a flagrant violation of the terms of the ordinance. Instead of collecting the towing

and storage charges as required by § 83, the chief of police would give the owner of the car an order directed to the plaintiff as follows: "This is your authority to release this car. All charges to be collected from the owner." Upon being presented with this order, plaintiff would release the car at a charge agreed upon by him and the owner. Sometimes it was the maximum charge permitted by the ordinance, but often less.

The arrangement was a lucrative one for plaintiff, and all went well until the late spring or early summer of 1936. By that time, plaintiff had in possession thirty-six unredeemed cars which had been impounded for more than sixty days. Towing and storage charges on these cars at the maximum rates allowed by the ordinance ranged from $17.50 to $152.50. The chief of police advertised these cars for sale in July, 1936, reserving the right "to reject any and all bids if deemed inadequate." The sale was held, and the chief of police rejected every bid which was insufficient to pay towing and storage charges against the car. The result was that only two cars were sold.

The unsold cars were turned over to plaintiff, who sold the lot for $150. There is a sharp dispute as to whether plaintiff accepted these cars in settlement of his towing and storage charges against them. But, in the view we take of the case, this is immaterial.

Again, in October, 1936, the chief advertised for sale nine unredeemed cars which plaintiff had had in custody for more than sixty days. Again he rejected bids which were insufficient to cover towing and storage charges, with the result that only one car was sold. Plaintiff was offered the unsold cars in settlement of towing and storage charges against them. This offer he rejected.

Plaintiff filed claims for towing and storage charges on these unsold cars. The claims were allowed only

to the extent of the charges against the three cars sold at the two auctions.

Plaintiff then filed his complaint, setting up two causes of action: The first for $1,451.75, balance claimed to be due for towing and storage on the cars which were not sold at the sale held in July; the second for $494.75, on account of such charges against the cars remaining unsold after the sale in October. The city, answering, set up an oral contract, by which it was alleged that plaintiff had agreed to take all unredeemed and unsold cars in settlement of the charges against them. Plaintiff replied, denying any such oral contract.

Evidence was offered by the city, and received without objection, in support of the alleged oral contract. Plaintiff, in testifying, denied it. The trial court found that such an agreement was made by the plaintiff and the chief of police, and accordingly entered judgment dismissing the action. Plaintiff appeals.

Since the parties joined issue and tried the case upon the question as to whether or not an oral contract was entered into whereby appellant was to accept unredeemed cars in settlement of the charges against them, the judgment might possibly be sustained on the theory indicated by the trial court's finding. For, in our opinion, the finding is supported by a clear preponderance of the evidence. We think, however, the judgment may and should be sustained on broader grounds.

Whether appellant's present action arises *ex contractu* or *ex delicto*, it is grounded on the dereliction of the chief of police in the performance of functions imposed upon him by the ordinance, namely, his failure, at the expiration of sixty days, to sell cars which had not been redeemed. The consequence of such a dereliction has never been more succinctly

stated than in the case of *Prather v. Lexington,* 52 Ky. 559, 56 Am. Dec. 585:

"They [public officers] are personally liable for their malfeasance or nonfeasance in office, but for neither is the corporation responsible. Omissions of a duty imposed upon them by law, productive of prejudice to an individual, is not a corporate injury. The duty of the officers of the city is prescribed by the statute, from which also they derive their power. The corporation appoints them to office, but does not in that act sanction their official delinquencies, or render itself liable for their official misconduct."

It is hardly open to question that article IX of the ordinance is an exercise of the police power of the city. Under no circumstance could the chief's tort in exercising his functions under it render the city liable. *Simpson v. Whatcom,* 33 Wash. 392, 74 Pac. 577, 99 Am. St. 951, 63 L. R. A. 815; *Franklin v. Seattle,* 112 Wash. 671, 192 Pac. 1015, 12 A. L. R. 247.

Nor could he by contract render the city liable, except in the manner provided by the ordinance. *Dickerson v. Spokane,* 35 Wash. 414, 77 Pac. 730; *State ex rel. Nat. Bank v. Tacoma,* 97 Wash. 190, 166 Pac. 66; *State ex rel. Hubbard v. Seattle,* 135 Wash. 505, 238 Pac. 1. In 2 McQuillin, Municipal Corporations (2d ed.), § 519, the rule is stated:

"Municipal officers are only agents of the local public in its corporate capacity; they act under defined powers and duties, limited and restricted by law, and, within the scope of their functions, may bind the corporation by their acts. However, if they exceed their authority, the corporation is not liable.

"The principle is well established that a public or governmental corporation like a municipal corporation is not estopped by the acts of its officers when they exceed their powers. The rule is that persons dealing with such officers must, at their peril, ascertain the scope of their authority."

■ The ordinance not only prescribes the duties of the chief of police with respect to unredeemed cars, but circumscribes appellant's right to claim compensation from the city for cars *"redeemed or sold, as herein provided, during the preceding month."* Section 86, *supra.* Under the express terms of the ordinance, it is a condition precedent to appellant's right to claim compensation from the city for towing or storing impounded cars, that they shall have been *"redeemed or sold."* Neither by nonfeasance nor misfeasance could the chief of police extinguish that condition or enlarge appellant's rights as against the city.

Judgment affirmed.

STEINERT, C. J., BEALS, MILLARD, and ROBINSON, JJ., concur.