[No. 28734. Department One. November 10, 1942.]

FRANK N. BENNETT, *Respondent,* v. GRAYS HARBOR COUNTY, *Appellant,* W. E. FICKEISEN, *Defendant.*[1]

[1]Reported in 130 P. (2d) 1041.

332

*Stanley J. Krause* and *Mitchell G. Kalin,* for appellant.

*Hogan & Adams,* for respondent.

STEINERT, J.—For a number of years prior to 1939, Carlisle Lumber Company owned a tract of land in Grays Harbor county consisting of three hundred twenty acres, described as the west half of section thirty-three, township twenty north, range eleven west. In this action, we are concerned more particularly with the eighty acres constituting the west half of the southwest quarter of that section together with the timber thereon. From 1930 to 1938 inclusive, the three hundred twenty acres and timber thereon were assessed together as real estate, standing in the name of Carlisle Lumber Company. The taxes for those years successively, excepting the year 1936, became delinquent in the total amount of $770.25.

On September 12, 1939, one Claude Trull, then a deputy treasurer of Grays Harbor county, prepared and issued a notice denominated "Notice of Treasurer's Sale of Personal Property For Delinquent Taxes And Property in Jeopardy." This notice stated that, pursuant to chapter 33, p. 185, Laws of 1933 (Rem. Rev. Stat. (Sup.), § 11247 [P. C. § 6882-86]), the treasurer had on that day levied, distrained, seized, and taken into his possession personal property of Carlisle Lumber Company described as "(TIMBER) W½ Sec. 33, Twp. 20, Rge 11" to enforce collection of taxes for the years above mentioned and of an "advance" payment of

$51.36 demanded by the treasurer for the year 1938, payable in 1939, all totalling $821.61. The notice further stated that a sale of the property would be held on a day therein fixed. A copy of the notice was sent to the Carlisle Lumber Company, the owner of the property.

On the same day, September 12, 1939, and presumably prior to the commencement of the distraint proceeding, Trull made a request of the county assessor that the timber on the eighty-acre tract be considered as personal property separate from the land for assessment and taxation purposes. Trull's reason for making this request was that he had learned that the timber was being logged off and dissipated. It appears by stipulation, made a part of the record, that trespassers had cut about one hundred thousand feet of the timber, of which they had carried away about fifty thousand feet, leaving the remainder lying on the ground within the tract. How much timber was left standing on the eighty acres is not shown by the record, although respondent states in his brief that it amounted to only about fifty thousand feet.

Pursuant to the information conveyed by Trull, the assessor made the requested separation. Prior to the time fixed for the sale, Trull advised the Carlisle Lumber Company by letter that the distraint proceeding did not cover the *standing* timber and that the former distraint notice should include "Down Timber Only."

On October 20, 1939, the sale was held and the timber was sold to W. E. Fickeisen, the only bidder therefor. Trull issued and delivered to Fickeisen a treasurer's bill of sale describing the property sold as "(Timber only) W½ of SW¼ Section 33 Twp. 20 Rge 11," and reciting that the consideration paid therefor was fifteen dollars, although Fickeisen's testimony was that he paid Trull the sum of twenty-five dollars.

Fickeisen also testified that on the day of that transaction Trull advised him that the bill of sale covered both "Down and Standing Timber."

About a year later, September 6, 1940, Fickeisen, in consideration of $125, executed a bill of sale according to the terms of which he sold and transferred to the plaintiff, F. N. Bennett, all timber *lying and standing* on the eighty-acre tract, and warranted the title thereto to be free and clear of any encumbrance. It appears that Bennett was at that time either engaged in or else contemplating a logging operation on adjoining land.

On December 7, 1940, at a tax foreclosure sale, the county purchased the entire eighty-acre tract, bidding in the property for the amount of the delinquent taxes against it.

In the spring of 1941, plaintiff commenced logging operations on the eighty-acre tract here in question. In preparation for such operation, he constructed a road onto the premises from the adjoining land upon which he had previously been operating. For that construction, plaintiff expended the sum of $214.

In the meantime, the former county treasurer had been succeeded in office by a new treasurer, and Trull likewise no longer held his former position as deputy. When the new treasurer, Minnie Swisher, learned of plaintiff's activities on the eighty-acre tract, which the county had purchased at tax foreclosure sale, she ordered him to cease operations, and, upon his refusal to do so, procured his arrest for trespassing on the county's land. Plaintiff thereupon commenced this action to quiet his alleged title to the timber on the eighty-acre tract and to enjoin the county from either asserting any title thereto or interfering with his alleged rights therein. He further asked that, if that relief should be denied him, he be granted judgment

against Fickeisen in the sum of $125, the amount theretofore paid by plaintiff for the timber. Fickeisen was then brought in as a party defendant in the action. Issues were joined by all parties, the cause was tried to the court without a jury, and judgment was entered against the defendant county as prayed for in plaintiff's complaint. The county has appealed.

The first question presented upon the appeal is this:

Where land and the timber *standing thereon* have been assessed together as real property, may the county taxing officers thereafter levy upon, distrain, and sell the unsevered timber as personal property, in satisfaction of the taxes previously levied upon the real property?

■ In this state, standing timber is, for taxation purposes, considered as real property when the title to both the timber and the land upon which it stands is vested in one and the same ownership. Rem. Rev. Stat., § 11108 [P. C. § 6882-4], so far as pertinent here, reads as follows:

"The term 'real property' for the purposes of taxation shall be held and construed to mean and include the land itself, whether laid out in town lots or otherwise, and all buildings, structures or improvements or other fixtures of whatsoever kind thereon, . . . .; and all substances in and under the same; *all standing timber growing thereon, except standing timber owned separately from the ownership of the land upon which the same may stand or be growing; . . .*" (Italics ours.)

Rem. Rev. Stat., § 11109 [P. C. § 6882-5], which is corollary to the preceding section, reads in part as follows:

"The term 'personal property' for the purposes of taxation, shall be held and construed to embrace and include, without especially defining and enumerating it, . . . *all standing timber held or owned separately*

*from the ownership of the land on which it may stand;
. . ."* (Italics ours.)

The decisions of this state recognize the force and effect of these, or similar antecedent, statutes. In *Weyerhaeuser Timber Co. v. Pierce County,* 97 Wash. 534, 167 Pac. 35, this court said:

"Our statutes (Rem. Code, §§ 9095 and 9222-1) permit the separate taxation of standing timber only in case the land and the timber are held in separate ownership."

See, also, *France v. Deep River Logging Co.,* 79 Wash. 336, 140 Pac. 361, and *Elmonte Inv. Co. v. Schafer Bros. Logging Co.,* 192 Wash. 1, 72 P. (2d) 311.

■ As shown by the record in this case, the land and timber here involved were both owned at the same time by the Carlisle Lumber Company and were assessed as real property from 1930 to as late at least as 1938, and during that entire period of time there had been no severance of the timber here in question from the land upon which it stood. Since the standing timber constituted real estate, it could not be assessed as personal property, and any attempt to so assess it would be illegal, and any sale looking to the enforcement of such assessment would be null and void. *Doe v. Tenino Coal and Iron Co.,* 43 Wash. 523, 86 Pac. 938; *Turner v. Spokane County,* 150 Wash. 524, 273 Pac. 959.

■ The general revenue laws of this state provide specific and ample methods for the collection of both real and personal property taxes which have become delinquent. The method provided for collecting such real property taxes is through the issuance of certificates of delinquency and the foreclosure thereof, and the method by which delinquent personal property taxes are collected is through distraint proceedings. Each of these two methods is exclusive in its own field. *Pierce County v. Merrill,* 19 Wash. 175, 52 Pac. 854;

*Clizer v. Krauss,* 57 Wash. 26, 106 Pac. 145. In the latter case, this court said:

"There appears to be no statutory method for the enforcement of the collection of taxes upon real property other than by foreclosing the lien thereon in the manner provided by the general revenue laws. This court has heretofore recognized the general rule that when the statute provides an ample and specific method of enforcing collection of taxes, such method is exclusive."

■ In so far, then, as the distraint proceeding covered standing timber, the sale thereunder was null and void, and Fickeisen got no title thereto from the county. Since Fickeisen could not sell something which he did not own or possess, his bill of sale to respondent did not convey, or transfer any rights in, the unsevered timber.

■ As already shown, however, a portion of the timber involved in this action was severed from the land after the real estate assessments from 1930 to 1938 were made. At the time of the sale under distraint, no part of the delinquent taxes above mentioned had been paid.

Rem. Rev. Stat. (Sup.), § 11247-1 [P. C. § 6882-5f] provides:

"Whenever standing timber which has been assessed as real estate is severed from the land as part of which it was so assessed, it may be considered by the County Assessor as personal property, and the County Treasurer shall thereafter be entitled to pursue all of the rights and remedies provided by law for the collection of personal property taxes in the collection of taxes levied against such timber: *Provided,* That whenever the County Assessor elects to treat severed timber as personalty under the provisions of this section, he shall immediately give notice by mail to the person or persons charged with the tax of the fact of his election, and the amount of tax standing against the timber."

Under that section of the statute, the county treasurer had the right to proceed as he did in so far as the timber which had been severed was concerned. The bill of sale from the treasurer to Fickeisen, and that from Fickeisen to respondent, were therefore valid to the extent that they covered the timber which had been severed at the time of the commencement of the distraint proceeding.

The second question involved upon the appeal is whether or not the title which the county acquired under the general tax foreclosure proceeding inured to the benefit of respondent in so far as the standing timber was concerned, regardless of any irregularity in the prior distraint proceeding. Respondent's contention upon this question is that, although the distraint proceeding may have been irregular and the title to the standing timber sold by the county treasurer defective, nevertheless when the county acquired title to the land, including the timber, at the general tax foreclosure sale, such title, in so far as the timber was concerned, inured to the benefit of the respondent. Appellant disputes that contention.

Respondent relies upon the principle that, where one party conveys or sells to another party property which the grantor or vendor does not own or to which his title is defective, and the grantor or vendor later becomes invested with title, the after-acquired title in the grantor or vendor inures to the benefit of the grantee or vendee. That principle has no application here, however, for the reason that, when the county purchased the land at the tax foreclosure sale, it took title and thereafter held the land not in its proprietary capacity, but in trust for the state and the various taxing municipalities in which the land lay. We have repeatedly so held. In *Sasse*

*v. King County,* 196 Wash. 242, 82 P. (2d) 536, we said:

"When a county purchases land at a general tax foreclosure sale, for want of other purchasers, the county takes and holds the land, not in its proprietary capacity, but in trust for the state and the various taxing municipalities within which the land lies. [Citing cases.]

"A resale of the land by the county is but a part of the statutory tax collecting process, which is not complete until such resale is finally made by the county, to the end that the proceeds thereof shall be justly apportioned to the various funds entitled thereto. [Citing cases.]"

Later cases using almost the same language as that above quoted are: *The Longview Co. v. Cowlitz County,* 1 Wn. (2d) 64, 95 P. (2d) 376; *State ex rel. Seattle v. King County,* 4 Wn. (2d) 589, 104 P. (2d) 575; *State ex rel. King County Water Dist. v. Stacy,* 10 Wn. (2d) 248, 116 P. (2d) 356; *Commercial Waterway Dist. No. 1 v. King County,* 10 Wn. (2d) 474, 117 P. (2d) 189; *Wolff v. Commercial Waterway Dist. No. 1,* 14 Wn. (2d) 45, 127 P. (2d) 262. The right and the duty of the county to hold and sell the land thus acquired, and upon such sale to fairly apportion the proceeds to the various funds entitled thereto, as required by law, are not adversely affected by the principle invoked by respondent.

The third question presented upon the appeal is whether the county is for any reason now estopped to dispute respondent's title to the standing timber here involved. Respondent contends that upon the facts as hereinbefore stated appellant is estopped to assert any title in derogation of that claimed by him. He places especial reliance upon the fact that the county never offered to repay either to Fickeisen or to respondent the money, whether fifteen or twenty-

five dollars, which Fickeisen had paid the county for the timber, and upon the further fact that the county has never offered to reimburse him, Bennett, for the $214 which he expended in building a logging road onto the eighty-acre tract.

■ The doctrine of equitable estoppel, or estoppel *in pais,* rests upon the principle that, where a person wrongfully or negligently by his acts or representations causes another who has a right to rely upon such acts or representations to change his condition, to his detriment or prejudice, the person performing such acts or making such representations is precluded from pleading the falsity of his acts or representations for his own advantage, or from asserting a right which he otherwise might have had. *Carruthers v. Whitney,* 56 Wash. 327, 105 Pac. 831; *Maxwell v. Dimond,* 83 Wash. 30, 145 Pac. 77; *Reynolds v. Travelers Ins. Co.,* 176 Wash. 36, 28 P. (2d) 310; 19 Am. Jur. 634, Estoppel, § 34; 31 C. J. S. 341, Estoppel, § 108. Whether or not the doctrine is to be applied in a given instance depends upon the particular facts and circumstances of the case.

■ While this doctrine may under certain conditions be applied against the state and its political subdivisions, and also against municipal corporations, the general rule is that it will not be applied against such political entities when not acting in a proprietary capacity, unless its application is clearly necessary to prevent manifest injustice. 19 Am. Jur. 818 *et seq.,* Estoppel, §§ 166-168; 31 C. J. S. 411 *et seq.,* Estoppel, §§ 140-141.

■ It is also the generally accepted rule that the public, whether exercising its functions through a state or through a county, city, town, or other governmental agency or instrumentality, cannot be estopped by unauthorized, illegal, or fraudulent acts or statements on the part of its officers and agents, even though benefits to the public have accrued and been accepted.

21 C. J. 1191, Estoppel, § 193; 31 C. J. S. 419 *et seq.,* Estoppel, § 142. In *State ex rel. Northeast Transportation Co. v. Schaaf,* 198 Wash. 52, 86 P. (2d) 1112, this court specifically recognized such to be the rule.

In *Brougham v. Seattle,* 194 Wash. 1, 76 P. (2d) 1013, we quoted with approval the following statement taken from 2 McQuillin, Municipal Corporations (2d ed.), § 519:

"Municipal officers are only agents of the local public in its corporate capacity; they act under defined powers and duties, limited and restricted by law, and, within the scope of their functions, may bind the corporation by their acts. However, if they exceed their authority, the corporation is not liable.

"The principle is well established that a public or governmental corporation like a municipal corporation is not estopped by the acts of its officers when they exceed their powers. The rule is that persons dealing with such officers must, at their peril, ascertain the scope of their authority."

When applied to the facts of the case at bar, the rules above stated eliminate any question of estoppel against the county in so far as the standing timber is concerned. Throughout all the proceedings and transactions which the county took or had with reference to the property in question, it was acting not in its private or proprietary capacity, but rather in its governmental capacity, as trustee for the state and the various taxing municipalities within which the land lies. Furthermore, the acts of the former treasurer and his deputy in distraining the standing timber and executing a bill of sale therefor were unauthorized and illegal. In dealing with the former treasurer, respondent was bound by the constructive notice of the law and the public records as to the measure of the treasurer's functions and powers. In

*State v. Pullman,* 23 Wash. 583, 63 Pac. 265, 83 Am. St. 836, this court said:

"Hence, if one, knowing their powers and limitations, sees fit to enter into illegal contracts, contracts which the law has forbidden for the protection of the tax payers of the municipality, he has no right to complain when he is estopped from enforcing his illegal contract by a plea of *ultra vires* by the citizens of a municipality. If he knew the law and contracted in the face of that knowledge, he certainly ought not to recover; if he did not know the law as matter of fact, he is subject to no greater hardship than has always been imposed upon the citizen, viz., the denial of the right to plead ignorance of the law on the theory that it was his duty to know it."

Respondent contends that the case of *Franklin County v. Carstens,* 68 Wash. 176, 122 Pac. 999, is decisive of the point now under discussion. We do not think so. That case is clearly distinguishable from the instant case for several reasons. In the first place, the opinion in the *Franklin County* case is rested upon the theory that, when a county purchases property at a general tax foreclosure sale, it takes title thereto in its proprietary capacity. As we have already seen, that is not the rule which obtains in this state at the present time. In fact, the *Franklin County* case has been specifically overruled, on that point, in *Gustaveson v. Dwyer,* 83 Wash. 303, 145 Pac. 458. In the second place, the facts in that case were clearly such as to warrant the application of the principle of equitable estoppel against the county, in order to prevent what would otherwise have been a manifest gross injustice. And finally, the opinion indicates that the contract which the county made with the property owner was not wholly unauthorized and illegal, but was merely defective or irregular. The facts and circumstances in the present case are entirely different.

The failure of the county to return to Fickeisen the full amount of the nominal consideration paid by him for the timber does not, in our opinion, warrant the application of the doctrine of estoppel on the ground that it is "clearly necessary to prevent manifest injustice." There is even less reason, under the circumstances, for the application of the doctrine because of the county's refusal to reimburse respondent for his expenditures in building the logging road. So far as the county is concerned, respondent would still have had to build the road in order to take out the down timber to which he is legally entitled. Furthermore, respondent had constructive notice of the powers and duties of the county treasurer with reference to delinquent tax sales.

Under the facts as found by the trial court, Fickeisen would be entitled to reimbursement from the county for a proportionate part of the purchase price paid by him for the timber, and respondent would be entitled either to a rescission of his contract of purchase from Fickeisen or else to reimbursement from Fickeisen for a proportionate part of the purchase price paid by respondent. Those matters can more properly be adjusted, however, upon a further hearing by the trial court.

The judgment is reversed and the cause remanded to the trial court, with direction to enter a decree quieting appellant's title to the land in question and the standing timber thereon, as against defendant Fickeisen and the respondent; to grant judgment against respondent for the value of any timber which he may have cut and since removed from the premises; to determine the proportionate amount which the county should repay defendant Fickeisen; and to determine whether respondent should be granted a rescission of his con-

tract with Fickeisen or a proportionate reimbursement from the latter. None of the parties will recover costs.

ROBINSON, C. J., MILLARD, BLAKE, and JEFFERS, JJ., concur.

