## UNITED STATES v. ALBERTS et al.

### UNITED STATES v. HALL et al.

Nos. 128—83, 157—1, G—439.

District Court, E. D. Washington, S. D.

May 10, 1944.

Lloyd L. Wiehl, of Yakima, Wash., for petitioning defendants.

Charles Powell, of Kennewick, Wash., for Benton County.

Smith Troy, Atty. Gen., and Jess N. Rosenberg, Asst. Atty. Gen., amici curiae.

SCHWELLENBACH, District Judge.

In these two condemnation actions, contests have arisen between the landowners and Benton County concerning the right of the County to receive from the award payments of sums sufficient to compensate the County for its 1944 taxes. The Salvini land was taken by the Government by the filing of declaration of taking on November 3, 1943. The date of the taking of the Bruggeman property was February 15, 1944. These two contests have been selected with the hope that out of them a determination may be reached which will control in a multitude of other contests. The reason for the selection of two will be apparent when I reach the discussion of an important change in the Washington State tax laws, effective January 1, 1944. These matters come before the Court under the provisions of the statute, 40 U.S.C.A. § 258a, providing "The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable." Salvini contends he is en-

titled to the entire amount of the award without deduction for taxes. Bruggeman contends that he is entitled to the entire award except for the deduction for taxes prorated upon the basis of the percentage which the time from January 1, 1944, to February 15, 1944, bears to the entire calendar year 1944. As to each of these defendants, the County claims its right to be paid the entire amount of the tax.

The vital question for determination is whether the taxes involved were a lien on the property at the time title vested in the United States. United States v. Certain Parcels of Land in Philadelphia, 3 Cir., 130 F.2d 782. To determine when a lien for the taxes attached, resort must be had to the laws of the state. Magruder v. Supplee, 316 U.S. 394, 396, 62 S.Ct. 1162, 86 L.Ed. 1555. There is nothing in the Federal Constitution which prevents the States from fixing the time when a tax lien attaches to real property. United States v. Alabama, 313 U.S. 274, 280, 61 S.Ct. 1011, 85 L.Ed. 1327. In Washington, real property is subject to assessment of taxation on January 1 of each year. Rem.Rev.Stats. of Washington, Sec. 11111. The Board of County Commissioners is required to levy taxes at its October session and on or before the second Monday in October to certify to the County Assessor the amount of taxes levied. Sections 11238 and 11239. Taxes are not collectible prior to the first Monday of the following February. Section 11243. Prior to January 1, 1944, the Washington statute provided, Section 11265, "The taxes assessed upon real property shall be a lien thereon from and including the first day of January in the year in which they are levied until the same are paid, but as between a grantor and grantee such lien shall not attach until the fifteenth day of February of the succeeding year." By an amendment adopted in 1943, effective January 1, 1944, Laws of Washington 1943, Chap. 34, "The taxes assessed upon real property shall be a lien thereon from and including the first day of January in the year in which they are levied until the same are paid, but as between the grantor and the grantee of any real property, and as between the vendor and the purchaser of any real property, when there is no express agreement as to payment of the taxes thereon due and payable in the calendar year of the sale or the contract to sell, the grantor or vendor shall be liable for the same proportion of such taxes as

the part of the calendar year prior to the day of the sale or the contract to sell bears to the whole of such calendar year and the grantee or purchaser shall be liable for the remainder of such taxes and subsequent taxes."

The precise question involved in the Salvini case was presented to the Washington Supreme Court in 1929, in Bethany Presbyterian Church v. Seattle, 154 Wash. 529, 282 P. 922. In that case, title passed on January 16. The County asserted its right to payment of taxes out of the award. Citing American Creameries Company v. Armour & Co., 149 Wash. 690, 271 P. 896, as authority for the conclusion that title passed from the church to the city in legal effect as from grantor to grantee, the Washington Supreme Court said [154 Wash. 529, 282 P. 924]: "Here was a transfer of title from the church to the city as if by deed the church had warranted the title as against existing general tax liens such as would have entitled the city to satisfy such liens out of the purchase price, but not the tax of 1928, as a lien against the land, because by the above expressed statutory provision such tax as between the grantor church and the grantee city did not become a lien upon the land until the second Monday in February, 1929, * * * when title to the land passed from the church to the city. * * * We are only deciding that the church is entitled to the whole of the eminent domain award because, at the time the city acquired title to the land by its eminent domain proceeding, the tax in question had not become a lien upon the land as between the church as grantor and the city as grantee." This ruling of the Washington Supreme Court was accepted and followed by the Circuit Court of Appeals for the Ninth Circuit in Commissioner v. Plestcheeff, 100 F.2d 62, 64, in determining the right of a devisee to deduct from income an amount of real estate taxes paid by her on property received on December 31. Relying upon and accepting the reasoning of the State Supreme Court in the Bethany Presbyterian Church case, the Circuit Court of Appeals said: "In any view, the Supreme Court of Washington did not restrict the application of the statute to controversies solely between grantors and grantees. We think it is implied in these cases that such application is not so restricted. As thus construed, we think the lien did not attach until the February after respondents ac-

quired the property, and they are entitled to the deduction."

In the light of these two decisions, the Salvini petition must be granted.

■ The Bruggeman petition presents the problem in a different posture. Regardless of the statutory change, the lien had attached prior to the filing of the declaration of taking. That being true, the award stands in the place of the property. Washington Water Power Company v. United States, 9 Cir., 135 F.2d 541; Nichols on Eminent Domain, 2d Ed., p. 353; 29 C.J.S., Eminent Domain, § 200; Port of Seattle v. Yesler Estate, 83 Wash. 166, 183, 145 P. 209. With these conclusions Bruggeman does not disagree. He asserts, however, that under the 1944 statute, he is entitled to a prorating as between himself and the Government and need only pay one-eighth of the tax. He asserts that the county's inability to collect the other seven-eighths from the United States simply constitutes the county's misfortune. His position must be that this statute shifted the liability for tax payment from the property to the owner. This theory would base the chances of revenue raising on the financial responsibility of the individual rather than the value of the realty. This runs counter to the long established state policy. Pierce County v. Merrill, 19 Wash. 175, 52 P. 854; Clizer v. Krauss, 57 Wash. 26, 106 P. 145; Bennett v. Grays Harbor County, 15 Wash.2d 331, 337, 130 P.2d 1041. It is true that the Washington Court has stated the rule in the guarded form that the statute which provides the tax provides a special remedy for its collection which is exclusive. See, Marion County v. Woodburn Mercantile Co., 60 Or. 367, 119 P. 487, 41 L.R.A.,N.S., 731. However, the abandonment of that rule might lead the state into the cul de sac of noncollectibility under the theory of Lane County v. Oregon, 74 U.S. 71, 19 L.Ed. 101, that taxes are not debts in the sense for which actions of debt may be maintained. See, Meriwether v. Garrett, 102 U.S. 472, 26 L.Ed. 197; Marion County v. Woodburn Mercantile Co., 60 Or. 367, 119 P. 487, 41 L.R.A.,N.S., 730. Compare, Price v. United States, 269 U.S. 492, 46 S.Ct. 180, 70 L.Ed. 373. Certainly to accept the contention would raise a possible barrier to collection against non-residents. Restatement of Conflict of Laws, § 610; Moore v. Mitchell, 281 U.S. 18, 24, 50 S.Ct. 175, 74 L.Ed. 673. Compare Milwaukee County v. M. E. White Co., 296 U.S. 268, 56 S.Ct. 229, 80 L.Ed. 220. I inject these doubtful issues solely to supplement the reasons for my disbelief that the legislature could have intended to do that which petitioner asserts. The power to tax is a basic incident of sovereignty. Without it no government can function. Surely, the legislature did not intend thus to fritter it away by the careless use of the words "the grantor or vendor shall be liable * * * and the grantee or purchaser shall be liable." If that was the intention, the retention of the lien for taxes was absolutely inconsistent with such purpose.

■■ The Washington Supreme Court has consistently insisted upon strict construction of exemption statutes as against those claiming an exemption. Columbia Irrigation District v. Benton County, 149 Wash. 234, 270 P. 813; Spokane County v. Spokane, 169 Wash. 355, 13 P.2d 1084; Wilson's Modern Business College v. King County, 4 Wash.2d 636, 104 P.2d 580. Certainly this strict construction rule must be extended over against those who claim the benefits of the exemption by virtue of dealing with one entitled to exemption. It seems apparent to me that, in 1943, the Legislature intended to cure the situation created by the Bethany Presbyterian Church case when it eliminated the phrase "such lien shall not attach until the fifteenth day of February of the succeeding year" in its new statute. The Legislature simply did here what Judge Healy, in his dissenting opinion in Commissioner v. Plestcheeff, supra, thought the old statute did; that is, that its purpose was "to fix the respective obligations of vendor and vendee, as between themselves, in respect of the payment of current taxes, or to make what the legislature considered to be a fair adjustment of the burden when the parties themselves have made no [express] agreement as to the matter." The net effect of the present statute is to give to the grantee a right of action against the grantor for the grantor's proportionate share of the tax which the grantee is compelled to pay and which, under the statute, the grantor should have paid. To hold that this section means more than that would put upon the county the burden of making the segregations and enforcing collection of the proportionate shares. Chaos in the collection of real estate tax revenues would result. The amount the Government pays

is based on the theory of just compensation for the land free and clear of liens. There is nothing unjust or inequitable in requiring the landowner to pay off tax liens. He would expect to do just that if he sold to anyone else. This question was considered by the Circuit Court of Appeals for the Third Circuit in United States v. Certain Parcels of Land in Philadelphia, 130 F.2d 782, 784. In that case, the Court said: "This we think [is] clearly a matter of adjusting the taxation burden between buyer and seller and not applicable where the property becomes exempt in the hands of the purchaser." This decision was followed in United States v. Certain Lands in the City of Eau Clair, D.C., 49 F.Supp. 225, 226.

The petition of Bruggeman is denied.