16 Wn. App. 709 (1977)
558 P.2d 821
ARTHUR FORD, ET AL, Appellants,
v.
BELLINGHAM-WHATCOM COUNTY DISTRICT BOARD OF HEALTH, ET AL, Respondents.
No. 3489-1.
The Court of Appeals of Washington, Division One.
January 10, 1977.
DeGarmo, Leedy, Oles & Morrison and David C. Stewart, for appellants.
Robert B. Sherwood, for respondents.
ANDERSEN, J..

FACTS OF CASE
Property owners in Sunday Harbor, a Whatcom County real estate subdivision, appeal from the refusal of a trial court to order the issuance of septic tank permits for their lots or, in the alternative, to enjoin the enforcement of septic tank regulations as they pertain to that subdivision.
Sunday Harbor soil conditions generally consist of 2 to 21/2 feet of permeable soil overlying an impervious layer and are unfavorable for septic tank installations. The Bellingham-Whatcom County District Department of Health (health department), the public health agency of that county, did at one time, however, approve the installation of 11 septic tanks on Sunday Harbor lots. This was in the period of time between 1969 when the plat of the subdivision was approved by Whatcom County officials and 1972, when more stringent sewage control regulations were adopted by the Bellingham-Whatcom County District Board of Health (board of health), the rule-making and legislative body of that health district.
In January of 1973 and thereafter, some lot owners applied for septic tank permits. The applications were denied by the health department on the basis that insufficient permeable soil, exclusive of fill, existed on the lots to comply with the minimum permeable soil depth requirements of the 1972 septic tank regulations.
*711 In the course of their efforts to obtain septic tank permits, the owners exhausted their administrative remedies and then brought this action seeking declaratory and injunctive relief.
Following a trial to the court, the trial court found that the regulations in question were reasonable and necessary and concluded: that the regulations were lawful and constitutional; that although the owners had shown that they had relied to their detriment on the prior actions taken and approval given by the health authorities, the doctrine of equitable estoppel should not apply; and accordingly, that the owners' suit should be dismissed. A judgment of dismissal was thereupon entered.
The owners appeal. Four issues are presented.

ISSUES
ISSUE ONE. Were the property owners deprived of any constitutional rights by the actions of the board of health and health department?
ISSUE TWO. Do the property owners have a vested right to obtain septic tank permits if they qualified for them either under regulations existing at the time the plat of the real estate subdivision, in which their property was located, was approved or at the time they acquired their lots?
ISSUE THREE. When septic tank permits are once issued to property owners in a subdivision based on existing sewage control regulations or variances granted, are the public health authorities thereafter estopped from denying septic tank permits to other property owners similarly situate?
ISSUE FOUR. Did the trial court err in not entering certain findings of fact proposed by the property owners?

DECISION

ISSUE ONE.
CONCLUSION. The septic tank regulations adopted by the board of health and the actions taken by the health department pursuant thereto were valid and constitutional exercises of police power delegated to them by the State in the public health and sanitation field.
The owners assign as error that "[t]he trial court erred *712 in concluding that the rules, regulations and conduct of [the board of health and health department] do not violate the United States or Washington State Constitutions."
Public health and public sanitation are broad objects of the police power of the state and its political subdivisions, and their protection and promotion within the various municipalities of the state constitute important and far-reaching functions of municipal government. 7 E. McQuillin, The Law of Municipal Corporations § 24.219 (3d ed. rev. 1968).
[1] The State of Washington has by statute delegated to local boards of health the authority to "[e]nact such local rules and regulations as are necessary in order to preserve, promote and improve the public health and provide for the enforcement thereof..." RCW 70.05.060(3). This grant of authority is valid and in this case the board of health had full authority to adopt regulations pertaining to private sewage disposal systems, including the septic tank regulations in issue. RCW 70.05.060(2); Snohomish County Bldrs. Ass'n v. Snohomish Health Dist., 8 Wn. App. 589, 594, 508 P.2d 617 (1973).
[2] Inasmuch as the police power is an attribute of sovereignty, it is a universally sustained principle that persons within a state or the inhabitants of a municipal corporation hold their property and are entitled to enjoy and use it subject to a reasonable exercise of the police power; and since the police power is inherent in the effective conduct and maintenance of government, it is to be upheld even though it affects adversely the property rights of some individuals. Bowes v. Aberdeen, 58 Wash. 535, 109 P. 369 (1910); Shepard v. Seattle, 59 Wash. 363, 109 P. 1067 (1910); Campbell v. State, 12 Wn.2d 459, 122 P.2d 458 (1942).
Although judicial relief will be granted in the proper case,
courts are reluctant to place limits on what may be done in the interest of the health of the community, so long as unreasonable methods are not employed or the natural and constitutional rights of citizens invaded. Accordingly, where not abused, municipal discretion as to the necessity *713 or propriety of ordinances and regulations to protect the public health will not be disturbed by the courts.
(Footnotes omitted.) 7 E. McQuillin, The Law of Municipal Corporations § 24.241 (3d ed. rev. 1968).
The owners' constitutional arguments are based on the due process clauses of the federal and state constitutions. U.S. Const. amend. 14, § 1; Const. art. 1, § 3.
[3] The legislative exercise of the police power is subject to review upon a due process challenge. When a constitutional challenge is made, however, the burden of establishing unconstitutionality rests upon the challengers, and every presumption is in favor of the constitutionality of the board of health regulations, since at the time the board of health adopted the regulations, it was functioning as a legislative body. Snohomish County Bldrs. Ass'n v. Snohomish Health Dist., 8 Wn. App. 589, 598, 508 P.2d 617 (1973). See State v. Swanson, 16 Wn. App. 179, 192, 554 P.2d 364 (1976).
[4] The owners argue that the septic tank regulations are "confiscatory, arbitrary and capricious as applied to Sunday Harbor ..." They cite an Illinois decision so holding in a somewhat similar situation, River Forest State Bank v. Hillside, 6 Ill.2d 451, 129 N.E.2d 171 (1955). In that case the trial court found that an ordinance prohibiting the issuance of building permits unless public sewer facilities were available to be confiscatory and therefore invalid. The appellate court in affirming, ruled that each such case is to be determined on its own facts and that the ordinance in question, as applied to the parcel of property there involved, was so arbitrary and unreasonable that it was invalid as to that property. The present case is distinguished from the Illinois case, however, in that here the trial court found as a fact that the septic tank regulations in question "are reasonable ... and are necessary to preserve and protect the health of the citizens of Whatcom County, Washington." No exception was taken to this finding of the trial court and we therefore accept it as a verity on this appeal. Selah v. Waldbauer, 11 Wn. App. 749, 753, *714 525 P.2d 262 (1974). In addition, there is substantial evidence in the record to support such finding.
We have reviewed the entire record in view of the owners' contentions as to the unconstitutionality of the regulations and conclude therefrom that the owners have not sustained their burden of establishing any due process violations. The trial court did not err in so concluding.

ISSUE TWO.
CONCLUSION. Persons who own property which qualifies for septic tank permits under existing regulations, but who do not apply for such permits while such regulations are in effect, have no legally cognizable vested right to obtain permits.
The owners' position is that to require them to put in sanitary sewers "would require an unreasonably large financial commitment compared with what Sunday Harbor lot owners were reasonably led to believe would be required ..." and that they have a right to have septic tank permits issued to them if their lots satisfy the standards prescribed by the septic tank regulations in force in 1969, when the Sunday Harbor plat was approved and when most of the lots were purchased.
[5, 6] Economic hardship usually cannot be urged as a reason for the avoidance of a legislative enactment pursuant to the police power. Bitts, Inc. v. Seattle, 86 Wn.2d 395, 400, 544 P.2d 1242 (1976). A vested right entitled to protection from legislation must be something more than a mere expectation based upon an anticipated continuance of the existing law. Godfrey v. State, 84 Wn.2d 959, 962, 530 P.2d 630 (1975); West v. Zeibell, 87 Wn.2d 198, 202, 550 P.2d 522 (1976).
It is now well established in zoning cases in this jurisdiction that although a property owner has a right to put property to a permissible use as provided by prevailing zoning ordinances, that right does not vest until the property owner applies for a building permit. State ex rel. Ogden v. Bellevue, 45 Wn.2d 492, 496, 275 P.2d 899 (1954); Hull v. Hunt, 53 Wn.2d 125, 130, 331 P.2d 856 (1958). This *715 same rule has also been applied in connection with the right of property owners to obtain other types of permits for the use of their property such as clearing and grading permits. Juanita Bay Valley Community Ass'n v. Kirkland, 9 Wn. App. 59, 83, 510 P.2d 1140 (1973).
We are persuaded by analogy to the foregoing cases that where a property owner has a right to obtain a septic tank permit under existing septic tank regulations, to the extent that such a right can vest, it does not do so until the owner actually makes a valid application for a septic tank permit. Since the septic tank regulations here in issue were adopted in 1972, and the permits were not applied for until 1973, the owners had no legally cognizable vested right to the issuance of septic tank permits. The trial court therefore did not err when it declined to order issuance of the permits.
Having based our holding on the "vested right doctrine," we do not reach the more basic issue of whether in the first instance anyone can ever have a vested right to imperil the health or otherwise impair the safety of the community. See Seattle v. Hinckley, 40 Wash. 468, 471, 82 P. 747 (1905); Hass v. Kirkland, 78 Wn.2d 929, 931, 481 P.2d 9 (1971); and Juanita Bay Valley Community Ass'n v. Kirkland, supra at 84.

ISSUE THREE.
CONCLUSION. The trial court did not abuse its discretion in refusing to apply the doctrine of equitable estoppel in this case.
In an effort to avoid application of the "vested right doctrine" just discussed, the owners argue that since they relied to their detriment on such actions as the adoption of prior septic tank regulations with which they could comply, the granting of variances, and the issuance of 11 septic tank permits, the health authorities should now be estopped to refuse issuance of the requested septic tank permits to the owners. They cite cases applying the doctrine of equitable estoppel against governmental bodies and agencies including Bennett v. Grays Harbor County, 15 Wn.2d 331, 130 *716 P.2d 1041 (1942); State ex rel. Shannon v. Sponburgh, 66 Wn.2d 135, 401 P.2d 635 (1965); and Finch v. Matthews, 74 Wn.2d 161, 443 P.2d 833 (1968).
In zoning cases dealing with the "vested right doctrine," our courts have not discussed promissory estoppel as such. They have, however, underscored the proposition that this state has not adopted the rule existing in some jurisdictions whereby a party's rights are affected in land use cases by positions having been changed, monies expended, or obligations incurred. Eastlake Community Council v. Roanoke Associates, Inc., 82 Wn.2d 475, 480, 513 P.2d 36 (1973).
[7] Even if we assume that the doctrine of equitable estoppel can apply,[1] the owners cannot prevail on that basis. Here the trial court concluded that despite the owners' reliance to their detriment, "the doctrine of equitable estoppel should not apply because of the overriding consideration of public health." In the consideration of an equitable doctrine, the trial court has certain inherent discretion it can exercise. Coy v. Raabe, 77 Wn.2d 322, 326, 462 P.2d 214 (1969). The trial court heard as well as observed the witnesses who testified for the parties and was as familiar with the facts of this case as this court. We will not here interfere with the trial court's exercise of its discretion in refusing to apply the doctrine of equitable estoppel in this matter involving public health and sanitation.

*717 ISSUE FOUR.
CONCLUSION. The findings of fact entered by the trial court covered the material facts and were legally sufficient since the questions decided and the manner in which they were decided clearly appear therefrom. The trial court did not err in declining to incorporate the portions of the owners' two proposed findings to which error is assigned, since they covered only additional evidentiary details.
The owners assign as error the failure to include two of their proposed findings of fact in the findings of fact which the court entered.[2]
[8] The basic purpose and requirements of findings of fact can be summarized: (1) in a case tried to the court, the trial court must make findings of ultimate fact concerning all of the material issues; (2) the trial court is not required to make findings in regard to every item of evidence introduced in a case; (3) the purpose of findings is to enable an appellate court to review the questions raised on appeal; and (4) when it clearly appears what questions were decided by the trial court and the manner in which they were decided, the requirements for findings have been met. CR 52; Bowman v. Webster, 42 Wn.2d 129, 133, 253 P.2d 934 (1953); Wold v. Wold, 7 Wn. App. 872, 875, 503 P.2d 118 (1972).
Measured by these standards, the findings of fact entered *718 by the trial court in this case met the necessary requirements. The findings were of ultimate facts, concerned all of the material issues, and the questions decided and the manner in which they were decided clearly appear. The trial court did not err in not incorporating the portions of the owners' two proposed findings to which error is assigned, since they covered only additional evidentiary details.
Affirmed.
WILLIAMS, C.J., and FARRIS, J., concur.
NOTES
[1] It can also be seriously questioned whether the doctrine of equitable estoppel can require or prevent the exercise of the police power, particularly in the fields of public health and safety. "Police power is an attribute of sovereignty, an essential element of the power to govern, and a function that cannot be surrendered." Shea v. Olson, 185 Wash. 143, 153, 53 P.2d 615, 111 A.L.R. 998 (1936). See 6 E. McQuillin, The Law of Municipal Corporations § 24.10 (3d ed. rev. 1969). The doctrine will not be applied against political entities when not acting in a proprietary capacity, unless its application is clearly necessary to prevent manifest injustice. Bennett v. Grays Harbor County, 15 Wn.2d 331, 341, 130 P.2d 1041 (1942). As a general rule, the doctrine of estoppel will not be applied against the government where application of that doctrine would encroach upon the sovereignty of the government and interfere with the proper discharge of governmental duties, and with the functioning of the government, or curtail the exercise of its police power in another similar situation. Finch v. Matthews, 74 Wn.2d 161, 169, 443 P.2d 833 (1968); 1 A.L.R.2d 340-41 (1948).
[2] The owners' proposed findings here referred to were as follows:

Plaintiffs Ford, as concerns Lot 80, have made expenditures for principal and interest payments, real property taxes and other expenses in connection with their ownership and anticipated residential use of their property.
(Italics ours.) Proposed finding of fact No. 4; and
Subsequent History of Area: During the period from July, 1969, when Sunday Harbor Subdivision was approved to the present, the region in northwestern Whatcom County in which Sunday Harbor is located has not expanded significantly in terms of additional residential or recreational development or in terms of population density.
Proposed finding of fact No. 6.
It is to be noted that contrary to the owners' contention, their proposed finding No. 4 was included within the findings entered by the trial court with the exception only of the four words in that proposed finding which we have italicized.