[No. 1630-42239-1.    Division One—Panel 1.    April 2, 1973.]

SNOHOMISH COUNTY BUILDERS ASSOCIATION, *Appellant,* v.
SNOHOMISH HEALTH DISTRICT, *Respondent.*

*Johnston & Woody* and *Frank J. Woody,* for appellant.

*Slade Gorton, Attorney General,* and *William C. Collins, Assistant, Bell, Ingram, Johnson & Level, William F. Ingram,* and *Edward E. Level,* for respondent.

JAMES, J.—Snohomish Health District was formed pursuant to RCW 70.46 to "have supervision over all matters pertaining to the preservation of the life and health of the people within" Snohomish County. RCW 70.05.060. By this action Snohomish County Builders Association seeks a declaratory judgment that three resolutions enacted by the district's board of health are invalid. The resolutions regulate the installation of private sewage disposal systems. The association's principal concern is that by the resolutions, minimum lot size to accommodate a private sewage system is increased from 9,600 square feet to 12,500 square

feet or to 1 acre where both a well and a septic disposal system are installed on one lot.

The trial judge concluded that the resolutions were valid. We agree.

On appeal the association first asserts invalidity of the resolutions because "the technique used to establish the membership of the district board of health did not meet the applicable statutory requirements" and because "the technique established by the respondent's resolutions were not followed."

RCW 70.46.030 provides that the membership of the board shall include "the three members of the board of county commissioners of the county" and that

[t]he remaining members shall be representatives of the cities and towns in the district selected by *mutual agreement* of the legislative bodies of the cities and towns concerned from their membership, taking into consideration the respective populations and financial contributions of such cities and towns.

(Italics ours.)

The trial judge found as a fact:

That the members of the Board of Health of the SNOHOMISH HEALTH DISTRICT have been selected with the consent and by the action of the legislative bodies of the various 18 cities and towns in the County of Snohomish and also include the three County Commissioners of the County of Snohomish, and that, in making said selection for the years 1968 through 1970, inclusive, consideration has been given to the factors of the respective populations and financial contributions of such cities and towns;

. . .

Finding of fact No. 3.

For at least three reasons, the association's claim that the health district was improperly organized must be rejected. First, although error was assigned to finding of fact No. 3, the finding was not set out verbatim in the association's brief. CAROA 43 provides: "No error assigned to any finding or findings of fact made or refused will be considered unless so much of the finding or findings as is

claimed to be erroneous shall be set out verbatim in the brief." Second, the trial judge's finding is supported by substantial evidence, and as an appellate court we will not substitute our judgment for that of the trial judge. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). Third, this action is not a proper vehicle for determining whether the members of the health district's board of health were legally chosen. "The only proper means of questioning the constitution and qualifications of the membership of a public body is a direct attack by *quo warranto.*" *Green Mountain School Dist. 103 v. Durkee*, 56 Wn.2d 154, 157, 351 P.2d 525 (1960).

█ As the trial judge concluded, irrespective of their de jure status, the members were de facto members of the board and their actions were, therefore, immune from collateral attack.

> An officer *de facto* is one who by some color of right is in possession of an office and for the time being performs its duties with public acquiescence, though having no right in fact. . . .
>     . . . But for the sake of order and regularity, and to prevent confusion in the conduct of public business and in security of private rights, *the acts of officers de facto are not suffered to be questioned* because of the want of legal authority *except by some direct proceeding* instituted for the purpose by the State or by some one claiming the office *de jure*, or except when the person himself attempts to build up some right, or claim some privilege or emolument, by reason of being the officer which he claims to be. In all other cases the acts of an officer *de facto* are as valid and effectual, while he is suffered to retain the office, as though he were an officer by right, and the same legal consequences will flow from them for the protection of the public and of third parties.

(Footnotes omitted. Italics ours.) 2 T. Cooley, *Constitutional Limitations* 1355 (8th ed. 1927). Cooley is quoted with approval in *Green Mountain School Dist. 103 v. Durkee, supra*, and *State v. London*, 194 Wash. 458, 78 P.2d 548, 115 A.L.R. 1255 (1938).

█ The association next claims that: "The technique

used to establish the membership of the district board of health was contrary to the United States Constitution, Article IV, and the Fourteenth Amendment to the United States Constitution, and Article I, Section 12 of the Washington State Constitution." The association's argument is that the scheme established by RCW 70.46.030 for the selection of members of the board violates the one-man one-vote principle enunciated in *Baker v. Carr*, 369 U.S. 186, 7 L. Ed. 2d 663, 82 S. Ct. 691 (1962). This argument is made for the first time on appeal. With few exceptions, appellate review is limited to a consideration of matters ruled upon by the trial judge. *Puget Sound Marina, Inc. v. Jorgensen*, 3 Wn. App. 476, 475 P.2d 919 (1970); *Long v. Odell*, 60 Wn.2d 151, 372 P.2d 548 (1962). Accordingly, we decline to consider the association's second argument.

The association further complains that the board "has no statutory authority to promulgate rules and regulations pertaining to sanitation." The argument in support of this assertion is that although the board is, by RCW 70.05.060, given authority to "(1) Enforce through the local health officer the public health statutes of the state and rules and regulations promulgated by the state board of health and the state director of health" and to "(2) Supervise the maintenance of all *health* and *sanitary* measures for the protection of the public health within its jurisdiction" (italics ours), it is empowered to enact *only* "(3) . . . such local rules and regulations as are necessary in order to preserve, promote and improve the public *health* and provide for the enforcement thereof;". (Italics ours.) The association reasons that the omission of the word "sanitary" from section 3 of RCW 70.05.060 evidences a legislative intent that local boards of health may not promulgate measures regulating private sewage disposal systems.

The association argues that RCW 70.05.060 should be interpreted to mean that only the state board of health is empowered to enact regulations pertaining to septic tank systems. The association asserts "that the state board of health has enacted rules and regulations concerning sanita-

tion and specifically septic tank systems." By RCW 43.20.050, the state board of health *is* empowered to "[a]dopt . . . regulations . . . related to the disposal of . . . sewage," and to "adopt standards and procedures governing the design, construction, and operation of sewage . . . disposal facilities;" but the association failed to establish that the state board of health has, in fact, promulgated any such rules or regulations. The only evidence produced by the association was Bulletin E.S. No. 1 issued by the Division of Engineering and Sanitation of the Washington State Department of Health, entitled "A Septic Tank System For Your Home." The bulletin contains general information relative to the "installation and maintenance of a septic tank disposal system." Significantly, however, the bulletin advises that the standards suggested are "in accordance with the Federal Housing Administration Minimum Property Requirements." The bulletin further advises that these *minimum* standards have been adopted by some health departments as their required standards, but that plans "should be specifically approved by your *local* health agency before installation is begun." (Italics ours.)

The Snohomish Health District's health officer testified that other than chapter 248-50 of the Washington Administrative Code, there are no rules or regulations issued by the State Department of Health relating to private waste or septic tank disposal systems. Chapter 248-50 is entitled "General Sanitation." It contains only general references to private sewage disposal systems.

█ █ To construe RCW 70.05.060 as the association would have it, we would need to be persuaded that the legislature considered "sanitary" measures to be something other than "health" measures. When RCW 70.46, Health Districts, and RCW 70.05, Local Health Departments, Boards, Officers—Regulations, are read in their entirety, it is clear that the association would have us ascribe a constrained and unintended meaning to the phrase "health and

sanitary measures." It is a recognized basic principle that statutes concerning public health and safety should be liberally construed.

> It is settled that laws and ordinances creating boards of health and granting wide powers for the effective and effectual carrying out of the legislative plan for protecting health, must be liberally construed.

*State ex rel. McBride v. Superior Court,* 103 Wash. 409, 427, 174 P. 973 (1918). Sanitary measures *are* health measures, and, therefore, by RCW 70.05.060 the Snohomish Health District is authorized to promulgate regulations pertaining to private sewage disposal systems.

■ The association next asserts that "the resolutions challenged are unconstitutional under Washington State Constitution Article XI, Section 11."

Const. art. 11, § 11 provides:

> Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws.

The association argues that "the constitutional authority of incorporated cities, towns and townships within a county concerning sanitary regulations cannot be impinged upon by any local governmental body other than the State of Washington." The answer to this argument is simply that article 11, section 11 does not purport to divest the legislature of its inherent police power, nor does it restrict the legislature in delegating its power. RCW 70.46 and RCW 70.05 are clearly "general laws" applicable to the state as a whole and do not reflect an unconstitutional usurpation of police power which could otherwise be exercised by counties, cities or towns.

> We have stated that the plenary police power in regulatory matters accorded municipalities by Const. art. 11, § 11, ceases when the state enacts a general law upon the particular subject, unless there is room for concurrent jurisdiction.

*Diamond Parking, Inc. v. Seattle,* 78 Wn.2d 778, 781, 479

P.2d 47 (1971). By the enactment of RCW 70.05.060, which delegates to local health boards the power to enact health regulations, "the legislature, in the exercise of its police power, [has chosen] to provide the machinery whereby [local health and sanitation] problems might be remedied on a local level." *Municipality of Metro. Seattle v. Seattle,* 57 Wn.2d 446, 455, 357 P.2d 863 (1960).

▮ The association also alleges that the legislature's delegation by RCW 70.05.060 of rule making power to local health boards violates article 2, section 1 of the Washington State Constitution which vests "the legislative authority" of the state in the legislature. The association's argument is that the delegation is without adequate standards of guidance.

Constitutionally, the legislature cannot surrender or delegate to local health boards its power to enact purely substantive law, but the constitutional prohibition does not preclude delegating the power to promulgate local rules and regulations to carry out an expressed legislative purpose. *Senior Citizens League, Inc. v. Department of Social Security,* 38 Wn.2d 142, 228 P.2d 478 (1951); *Chas. Uhden, Inc. v. Greenough,* 181 Wash. 412, 43 P.2d 983, 98 A.L.R. 1181 (1935).

While the delegation of legislative power must be circumscribed by guiding standards, details and specifics may be determined by the body to which the power is delegated. "[T]he complexity of the subject matter of legislation, and its character as an exercise of police power or otherwise, are to be taken into consideration in determining whether there has been an unlawful delegation of legislative power." *Senior Citizens League, Inc. v. Department of Social Security, supra* at 161; *Water Dist. 105 v. State,* 79 Wn.2d 337, 485 P.2d 66 (1971). Cited as support for this rule of common sense and practicality is *Kelleher v. Minshull,* 11 Wn.2d 380, 397, 119 P.2d 302 (1941):

> It is not always necessary that statutes and ordinances prescribe a specific rule of action. This is particularly true in those situations where it is difficult or impractica-

ble to declare a definite, comprehensive rule, or where the discretion to be exercised by an administrative officer relates to a regulation imposed for the protection of public morals, health, safety, and general welfare. 11 Am. Jur. 948, Constitutional Law, § 234.

The association further contends that the resolutions are arbitrary and capricious and fail to meet the test of "reasonableness" compelled by the due process standards of article 1, section 3 of the Washington State Constitution and the fourteenth amendment to the United States Constitution. The trial judge found:

> That the resolutions and regulations adopted thereby hereinabove referred to pertain to the exercise of control over private waste disposal systems within the County of Snohomish and the 18 cities and towns therein as installed for the purpose of serving single family residences and that said regulations were proposed by the staff of the SNOHOMISH HEALTH DISTRICT to the Board after due consideration by the staff, over a period of many months, [of] various periodicals and journals dealing with septic tanks and private waste disposal systems as applied to local county conditions and factors and that said regulations were promulgated by the SNOHOMISH HEALTH DISTRICT Board of Health after due consideration to such factors, particularly, the high water table prevalent in the Western part of the County of Snohomish and the lack of top soil below a depth of 18 to 36 inches in the vast majority of the land area in the buildable areas of the County of Snohomish.

Finding of fact No. 5.

> That the object and purpose of said regulations hereinabove described is to provide standards for the design and construction of private waste disposal systems, the installation thereof, licensing of installers and designers, and consideration of the utilization of said systems in the subdivision of property; that the purpose of said regulations is to minimize the likelihood of failures in the use of private waste disposal systems servicing single family dwellings to be constructed in the County of Snohomish and in the cities and towns in said county after the effective date thereof; that the presence of waste material from such systems on the surface of the ground, or

seeping through the ground, from the drainfields or the septic tanks servicing said private waste disposal systems without proper dispersion and absorption in the soil creates a condition dangerous and inimical to public health and enhances the likelihood of the spread of contagious disease.

Finding of fact No. 6.

▮ Legislative enactments, be they statutes, ordinances, rules, or regulations, are an exercise of "police power," and are presumed to be constitutionally sanctioned.

However difficult it may be to give a precise or satisfactory definition of "police power," there is no doubt that the state, in the exercise of such power, may prescribe laws tending to promote the health, peace, morals, education, good order and welfare of the people. Police power is an attribute of sovereignty, an essential element of the power to govern, and a function that cannot be surrendered. It exists without express declaration, and the only limitation upon it is that it must reasonably tend to correct some evil or promote some interest of the state, and not violate any direct or positive mandate of the constitution.

*Shea v. Olson,* 185 Wash. 143, 153, 53 P.2d 615, 111 A.L.R. 998 (1936).

▮ While the legislative exercise of police power is subject to judicial review upon a due process challenge, the proper scope of such review is narrowly circumscribed.

An ordinance to be void for unreasonableness must be clearly and plainly unreasonable. *Seattle v. Hurst,* 50 Wash. 424, 97 Pac. 454. The burden of establishing the invalidity of an ordinance rests heavily upon the party challenging its constitutionality. *Letterman v. Tacoma,* 53 Wn. (2d) 294, 333 P. (2d) 650. Every presumption will be in favor of constitutionality. *Winkenwerder v. Yakima,* 52 Wn. (2d) 617, 328 P. (2d) 873. And, if a state of facts justifying the ordinance can reasonably be conceived to exist, such facts must be presumed to exist and the ordinance passed in conformity therewith. *Shea v. Olson,* 185 Wash. 143, 53 P. (2d) 615, 111 A.L.R. 998. These rules are more than mere rules of judicial conven-

ience. They mark the line of demarcation between legislative and judicial functions.

*Lenci v. Seattle,* 63 Wn.2d 664, 667, 388 P.2d 926 (1964).

Findings Nos. 5 and 6 are supported by substantial evidence. The challenged regulations are reasonable in view of the soil conditions found to be prevalent in Snohomish County. It follows that they were neither arbitrary nor capricious.

■ Finally, the association contends that the regulations should be struck down because they contain no provision for appeal. In *Water Dist. 105 v. State, supra,* a similar challenge with reference to RCW 57.08.065 (authorizing water districts to establish sewer systems) was disposed of with the following comment at page 344:

> The plaintiff argues, however, that the delegation of authority to the respective agencies does not have sufficient procedural safeguards for the reason that the legislature made no provision for review in the 1967 act. This contention is without merit. The Washington Administrative Procedures Act, RCW 34.04, provides for sufficient opportunities for review of the administrative actions.

Affirmed.

SWANSON, C.J., and FARRIS, J., concur.