Honorable Richard A. Weyrich Skagit County Prosecuting Attorney 605 South Third Street Mount Vernon, WA 98273
Dear Prosecutor Weyrich:
By letter previously acknowledged, you have requested an opinion on the following questions, which we have paraphrased slightly for clarity:
 Does a county board of health acting under RCW 70.05.060 have authority to:
 (1) order a public utility district (PUD) to add fluoride to its water system;
 (2) order a PUD to fluoridate a discrete portion of its water system, over the PUD's objection; [original page 2]
 (3) order one of several water utilities within the county to fluoridate its water system, as opposed to enacting an ordinance of county-wide applicability; or
 (4) order a PUD to fluoridate where the order is contingent on funding from a private third party?[1]
 BRIEF ANSWERS
1. RCW 70.05.060(3) is a broad grant of authority that provides local boards of health with the ability to adopt and enforce local rules and regulations that are necessary to preserve, promote, and improve public health. Local water fluoridation ordinances have generally been upheld as actions that are consistent with the exercise of delegated public health police powers and that do not violate constitutionally-protected liberty interests. Although a water fluoridation regulation adopted by a local health board was invalidated in Parkland Light Water Co. v.Tacoma-Pierce Cy. Bd. of Health, 151 Wn.2d 428, 90 P.3d 37 (2004), that result occurred because the health board's enactment of the regulation conflicted with a more specific state law granting water districts the authority to make water fluoridation decisions. Public utility districts (PUDs) have not been granted the same type of decision-making authority, and other state law addresses water fluoridation. Accordingly, we conclude that a local health board regulation that requires a PUD to fluoridate its water supply is consistent with the authority provided in RCW 70.05.060.
2. Assuming that there is a rational basis for a public health district's decision to mandate water fluoridation, the broad grant of police power authority provided by RCW 70.05.060(3) includes the power to require water fluoridation over the objection of a PUD. With regard to the issue of a local health board's decision to require only a portion of some water supply to be fluoridated, your question did not provide specific facts regarding the basis for drawing such a distinction. We generally observe that governmental entities are not required to solve every aspect of an identified problem at one time.
3. A county health board may enact a regulation requiring the fluoridation of water supply systems generally but, subject to constitutional requirements, a generally applicable regulation is not prerequisite to the issuance of enforcement orders on the subject.
4. RCW 70.05.060 does not prohibit a health board from adopting public health regulations that are contingent upon a third party source of funding. Statutes establishing funding contingencies have been upheld when enacted by the Washington Legislature. This [original page 3] leads us to conclude that the same result would be obtained when a local legislative body considers and adopts funding contingencies as a part of its enactments.
 ANALYSIS
1. Does a county board of health acting under RCW 70.05.060 haveauthority to order a public utility district (PUD) to add fluoride toits water system?
RCW 70.05.060 is a broad grant of authority and provides that "[e]ach local board of health shall have supervision over all matters pertaining to the preservation of the life and health of the people within its jurisdiction."[2] The statute goes on to enumerate some of the powers these boards possess. In particular, subsection 3 specifies that local health boards have the authority to "[e]nact such local rules and regulations as are necessary in order to preserve, promote and improve the public health and provide for the enforcement thereof". Id. The statute has been construed as "the machinery whereby [local health and sanitation] problems might be remedied on a local level." Snohomish Cy.Bld'rs v. Health Dist., 8 Wn. App. 589, 596, 508 P.2d 617 (1973) citingMunicipality of Metro. Seattle v. Seattle, 57 Wn.2d 446, 455,357 P.2d 863, 869 (1960).
Statutes delegating public health police powers are typically viewed as "a broad grant of powers to local health officials". Spokane Cy.Health Dist. v. Brockett, 120 Wn.2d 140, 148-50, 839 P.2d 324 (1992). Accordingly, court review of public health initiatives is limited and focuses on whether there is conflict with a more specific legislative enactment or the infringement of some constitutional right.Parkland, 151 Wn.2d 428; Brockett, 120 Wn.2d at 149; Kaul v. City ofChehalis, 45 Wn.2d 616, 621, 277 P.2d 352 (1954).
Local health regulations requiring the fluoridation of water have been reviewed and upheld in several cases. In Kaul v. Chehalis, the Washington State Supreme Court affirmed the validity of an ordinance enacted by the City of Chehalis mandating the fluoridation of its water supply.[3] Starting with the premise that police powers granted to address health issues are construed broadly, the Court concluded that the prevention of dental caries (decay) through water fluoridation is consistent with the authority to "prevent the introduction and spread of disease." Kaul, 45 Wn.2d at 621. The Court found that there was no conflict between the Chehalis fluoridation ordinance and the general laws of Washington State. Id. It also rejected the argument that ordinances requiring the fluoridation of water are a form of forced medical treatment that impinges upon constitutionally-protected liberty interests. Id.
 [original page 4] Ordinances directing local water purveyors to fluoridate water were upheld in several other cases where local governments acted pursuant to statutes granting broad public health and safety police powers. See Birnel v. Town of Fircrest, 53 Wn.2d 830,335 P.2d 819 (1959) (per curiam opinion upholding an ordinance by the town of Fircrest based upon Kaul); Wilson v. City of Mountlake Terrace,69 Wn.2d 148, 417 P.2d 632 (1966) (fluoridation ordinance upheld against a claim that it resulted in the exercise of police powers outside the city's jurisdiction where the treated water supply was consumed by persons residing outside the city limits).
Your question focuses upon the authority provided under RCW 70.05.060. That statute specifically addresses the power of local health boards to regulate water for the preservation of public health and safety. In light of this express reference to public health, and considering the similarity between this statute and the public health police powers at issue in Kaul and Brockett, we conclude that RCW 70.05.060 would be liberally construed as a broad grant of public health police powers providing local health boards with the authority to enact and enforce regulations requiring the fluoridation of water. The Brockett Court noted that the statutory source of authority relied upon by Chehalis to fluoridate its water is similar in nature to the authority provided by RCW 70.05.060 and concluded that "[s]imilar interpretation should result where the language and subject matter of two statutes are similar."Brockett, 120 Wn.2d at 150.
While RCW 70.05.060 provides broad authority to regulate water for public health purposes, that power must not be exercised in a manner that is inconsistent with other state laws or constitutional provisions. The decision in Kaul v. Chehalis rejected the argument that fluoridation ordinances violate constitutionally-protected liberty interests. We see no reason to conclude that the constitutional analysis would be any different today for a regulation issued by a local health board. However, the decision in Parkland and the enactment of water fluoridation legislation in 2002 requires a closer look at whether a water fluoridation regulation adopted pursuant to RCW 70.05.060(3) might conflict with some other more specific law.
To assess whether a local health board's water fluoridation decision might conflict with the management authority provided to local water purveyors, we begin by reviewing previous opinions from this office regarding the authority of water districts and public utility districts to fluoridate the water supply systems they operate. AGO 1987 No. 3
examined the scope of authority provided to water districts under RCW chapters 57.04 and 57.08 as then enacted. At that time, water districts could be formed for "the acquirement, construction, maintenance, operation, development and regulation of a water supply system and providing for additions and betterments thereto". See former
RCW 57.04.020.[4] Water districts also had the general power to regulate and control the use, distribution, and price of water within its district. See former RCW 57.08.[5] The 1987 opinion concluded that these statutes authorized the general operation of water [original page5] systems, but it did not provide a source of authority to adopt public health regulations implementing the fluoridation of water.[6]
A March 24, 1989 informal opinion from this office analyzed the authorities granted to PUDs to own and operate water supply systems.[7] The opinion observed that the powers granted to PUDs pursuant to RCW 54.04 were fundamentally the same as those for water districts"the power to operate water systems and to regulate the sale and distribution of water supplies, but not the power to enact public health regulations. Accordingly, the opinion concluded that PUDs do not have the authority to fluoridate their water supplies.
The statutory authority provided to water districts was amended in 1988. RCW 57.08.012, as adopted in 1988, now provides water districts with express authority to fluoridate their water supplies by a majority vote of their commissioners or by referring that proposition to an election with approval requiring a favorable vote by a majority of the electors in the water district. Id. In Parkland, the Court considered the application of RCW 57.08.012 in relation to the power of local governments to require the fluoridation of water supplies.
The question presented in Parkland was whether a local health board's general public health police powers under RCW 70.05.060 might conflict with the specific powers granted to water districts in RCW 57.08.012. The Tacoma-Pierce County Board of Health had adopted a resolution and regulation mandating water fluoridation of Pierce County water systems affecting more than 5,000 people. The regulation was adopted pursuant to RCW 70.05.060(3). Several water districts affected by this resolution challenged its adoption, arguing that it conflicted with their more specific authority to consider fluoridation under RCW 57.08.012. TheParkland Court agreed, concluding that an order to fluoridate water under the broad but general authority of RCW 70.05.060 presented an irreconcilable conflict with the more specific authority granted to water districts. Parkland, 151 Wn.2d at 432. The Court reasoned that RCW 57.08.012 grants water districts the specific power to decide whether to fluoridate their water supplies, including the power to decide against fluoridation. Accordingly, while health districts have broad and general powers to enact water fluoridation regulations as recognized inKaul, that power is superseded in those cases where a water purveyor has been granted the specific authority to decide whether to fluoridate its water.
[original page 6] The current authority granted to PUDs is virtually identical to the authority granted to water districts prior to 1988. PUDs have the power to
 construct, purchase, condemn and purchase, acquire, add to, maintain, conduct, and operate water works and irrigation plants and systems, within or without its limits, for the purpose of furnishing the district, and the inhabitants thereof . . . with an ample supply of water for all purposes, public and private, including water power, domestic use, and irrigation, with full and exclusive authority to sell and regulate and control the use, distribution, and price thereof.
RCW 54.16.030.
As discussed above, in AGO 1987 No. 3, this office concluded that such statutory language does not delegate public health police powers to a water district and does not provide authority regarding decisions to fluoridate water. Following this reasoning, the March 24, 1989, informal opinion from this office to Senator Bauer concluded that PUDs do not have public health police powers under RCW 54.16.030 and therefore have no authority to make water fluoridation decisions. While water districts were provided with express authority to make fluoridation decisions in 1988, PUDs were not provided with similar authority. Accordingly, without any general public health police powers, and with no explicit fluoridation powers similar to those provided to water districts in RCW 57.08.012, a local health board regulation requiring a PUD to fluoridate its water supply does not present the conflict identified inParkland.
In conclusion, RCW 70.05.060 is expressly directed to the preservation, promotion, and improvement of public health. It provides local health districts with a broad grant of public health police powers similar to the authority the Kaul Court reviewed when affirming the power of the city of Chehalis to fluoridate its water. SeeBrockett, 120 Wn.2d at 150. A water fluoridation regulation enacted pursuant to this authority does not violate any identifiable constitutional liberty interests. Furthermore, because PUDs do not have either general or specific authority to fluoridate water, a local health district regulation requiring a PUD to fluoridate its water does not conflict with the more specific form of fluoridation decision-making authority addressed in Parkland. For these reasons, we conclude that a local health district has the authority under RCW 70.05.060(3) to require a PUD to fluoridate its water supply to prevent dental decay.
2. Does a county board of health acting under RCW 70.05.060 haveauthority to order a PUD to fluoridate a discrete portion of its watersystem, over the PUD's objection?
The answer to your previous question concludes that the police powers granted to local health boards under RCW 70.05.060(3) are broad enough to authorize a regulation mandating the fluoridation of water. The authority provided in that statute includes the ability to enact rules and regulations for the enforcement of such regulations. Because there is no basis for a PUD to object to the enactment of such a regulation under the principles set forth in Parkland, we [original page 7]
conclude that a local health board has the authority to enforce a fluoridation requirement over the objection of a PUD.[8]
To the extent your question is focused upon a local health district's determination to require fluoridation for only a discrete portion of a PUD's water system, you appear to raise constitutional equal protection concerns. An equal protection analysis requires an inquiry into the rational basis for any distinctions that may be drawn, but we do not have sufficient facts to fully analyze whether a rational basis exists for making such the distinction identified in your question.[9]
However, nothing in either the broad grant of authority provided by RCW 70.05.060, or any other state statute, necessarily requires a local health district to mandate water fluoridation across all water purveyors within its jurisdiction.
The exercise of police powers is also subject to judicial review under principles of due process, but such review is typically very narrow.Snohomish Cy. Builders Ass'n, 8 Wn. App. at 598. The burden of establishing that an enactment is unreasonable is substantial and lies with the party contesting the legislation. "Every presumption will be in favor of constitutionality . . . [a]nd, if a state of facts justifying the ordinance can reasonably be conceived to exist, such facts must be presumed to exist". Id.
Because we do not have the factual basis to analyze a local health district's decision to require fluoridation of only a discrete portion of a PUD's water system, this opinion cannot address potential constitutional claims that might be asserted in opposition to such a regulation.
3. Does a county board of health acting under RCW 70.05.060 haveauthority to order one of several water utilities within the county tofluoridate its water system, as opposed to enacting an ordinance ofcounty-wide applicability?
Your question draws attention to the fact that the Skagit County board of health's water fluoridation resolution orders a single water purveyor to fluoridate its water, rather than adopting a requirement of county-wide applicability.[10] To address whether this distinction is of any significance in this case, we return to the legislative authority provided by RCW 70.05.
[original page 8] RCW 70.05.060 generally charges local health boards with the "supervision over all matters pertaining to the preservation of the life and health of the people within its jurisdiction". The statute then provides a more detailed enumeration of the means for undertaking this mission.
RCW 70.05.060(3) provides local health boards with the authority to enact "rules and regulations" relating to the preservation of public health, together with the power to "provide for the enforcement" of those rules and regulations. Subsection 4 of the statute requires local health boards to provide "for the control and prevention of any dangerous, contagious or infectious disease" within their jurisdiction. Subsection 5 requires local health boards to provide "for the prevention, control and abatement of nuisances detrimental to the public health".[11]
Your question asks whether a requirement applicable to all water supplies within the jurisdiction of the local health board is the only means by which the board may undertake its responsibilities. There is nothing in RCW 70.05.060 that specifically references the scope of the board's health measures. Portions of the statute refer specifically to "rules and regulations", while other portions of the statute appear to speak more broadly and simply require health boards to "provide for" the desired objective. Viewing the statute as a whole, it is reasonable to conclude that the Legislature intended to provide local health boards with broad discretion regarding the public health issues and the means for addressing those issues within their jurisdiction.Brockett, 120 Wn.2d at 148-50 (Statutes delegating public health police powers are typically viewed as "a broad grant of powers to local health officials").
To the extent that attention is directed to a health board's authority under RCW 70.05.060(3) to enact "local rules and regulations" as a means for carrying out public health initiatives, we are cognizant of the fact that a distinction is sometimes drawn between actions of a local governmental body that are legislative, as opposed to administrative, in nature. "Rules" and "regulations" are sometimes thought of as the exercise of legislative power and the means by which a requirement of general applicability is established. See, e.g., Slaughter v. SnohomishCy. Fire Prot. Dist. 20, 50 Wn. App. 733, 738, 750 P.2d 656 (1988). In contrast, administrative actions tend to apply a law or policy already enacted to a specific situation or entity. See Jorgenson v. City ofSeattle, 99 Wn.2d 861, 865, 665 P.2d 1328 (1983). At the same time, courts have recognized that local rules may have an "administrative aspect" (Id. at 867) and that local legislative entities may sometimes act in a quasi-adjudicatory capacity (Westside Hilltop v. King Cy.,96 Wn.2d 171, 176-77, 634 P.2d 862 (1981)). In addition, in LaMon v. Cityof Westport, 22 Wn. App. 215, 588 P.2d 1205 (1978), where the Court of Appeals concluded that a local government may choose to act by motion and resolution, or by ordinance, unless a particular [original page9] form of action is required by law. See also Ehrhardt v. City ofSeattle, 33 Wash. 664, 74 P. 827 (1903).[12]
None of these observations lead us to conclude that the Legislature intended to limit the discretion exercised by local health boards by prescribing that they must enact rules and regulations of general applicability. The plain meaning of the words "rule" and "regulation" includes a "governmental order with the force of law." See Webster's IINew Riverside College Dictionary 934, 968 (1995). That might include an order directed at a single PUD, or an order that applies to all PUDs operating water systems within the local health board's jurisdiction. Our conclusion that the Legislature did not utilize the words "rule" and "regulation" to narrow the means by which local health boards may undertake their public health mandate finds additional support in the fact that the terms "ordinance," "resolution," "regulation," and "order" are often used interchangeably when speaking about the powers of local governments. See 5 Eugene McQuillan, The Law of MunicipalCorporations § 15:8 (3d ed. 2004). Indeed, the word "regulation" is thought of as the "most general" of all these terms. Id.
In conclusion, given the broad public health mandate set forth in RCW 70.05 and the generally wide latitude provided for undertaking public health objectives, we do not conclude that a regulation of general applicability is required, per se, in order to implement a local health board's decision to require the fluoridation of water supplies within its jurisdiction.
4. Does a county board of health acting under RCW 70.05.060 haveauthority to order a PUD to fluoridate where the order is contingent onfunding from a private third party?
The water fluoridation resolution you reference is contingent upon a source of third party funding for the initial capital costs of the fluoridation works that will be required to implement the regulation. The subject of contingent legislation has been examined in the context of article II, section 1 of the Washington Constitution vesting the Legislature with all legislative authority. Legislation that abdicates or delegates this function to others is unconstitutional. Brower v.State, 137 Wn.2d 44, 969 P.2d 42 (1998).
The provisions of article II, section 1 are principally directed to the Legislature, rather than local agencies to which the Legislature may delegate certain powers and functions. Accordingly, the first inquiry must be whether the resolution is consistent with RCW 70.05.060. Nothing in that statute limits the exercise of a local health district's authority based upon funding considerations. As a practical matter, government often considers the ability to implement proposed actions based upon funding concerns.
To the extent that the non-delegation principle applies when local legislative bodies act in reliance on statutory grants of power to adopt local rules and regulations, case law generally supports the authority to adopt contingent legislation where the Legislature has considered and established the operative contingency. For example, in Brower, the Court reviewed a statute [original page 10] providing for the financing and construction of a stadium for the Seahawks football team that was contingent upon its approval by the voters and the agreement of a private entity to pay for the costs of the election. The Court concluded that this was not an unconstitutional delegation of legislative authority, because the Legislature had made the determination about the wisdom and character of the conditions that needed to be met.Id. at 54-55. It did not matter that a third party had the discretion to decide whether to fulfill the condition or that such party might have some interest in whether the condition was fulfilled. Id.[13] See alsoState v. Storey, 51 Wash. 630, 632, 99 P. 878 (1909) (concluding that there is no impermissible delegation of authority simply because the effect of legislation requires the fulfillment of some contingency, even where fulfillment of the contingency depends upon the actions of some private person).
For these reasons, we conclude that a health board's authority to issue a fluoridation regulation pursuant to RCW 70.05.060(3) is not affected by a decision to make the operation of that regulation contingent upon a third party source of funding.
We trust that the foregoing analysis will be helpful to you. Sincerely,
ROB McKENNA Attorney General
MICHAEL S. GROSSMANN Senior Counsel
:pmd
[1] Your opinion request is based upon a resolution recently issued in Skagit County, the jurisdiction you serve as principal legal advisor. Consistent with our usual practice, this opinion discusses the state of the law in relation to the general issues raised in your inquiry. The opinion expresses no views on whether the specific content or terms of the resolution are consistent with applicable law. We mention your county a few times in the opinion, as an example to provide a factual context for our legal analysis.
[2] Because Skagit County does not have a home rule charter form of government, the board of county commissioners sits as the local board of health. See RCW 70.05.030.
[3] The City of Chehalis enacted its ordinance pursuant to former RCW 35.23.440(27), providing cities with the authority to "prevent the introduction and spread of disease". (The language of subsection 27 as codified in 1954 is now found in subsection 25 of that statute.)
[4] The statutory framework of RCW 57.04 has since been revised. It now includes a cross reference to the powers provided to water districts under RCW 57.08. See Laws of 1996, ch. 230, § 202. RCW 57.08.012 was added in 1988 and provides a statutory mechanism for water districts to consider and implement water fluoridation treatment programs. The effect of this addition is discussed herein in relation to the decision in Parkland.
[5] In 1987, RCW 57.08.010(1) provided water districts with the authority to "construct . . . purchase . . . maintain, and supply waterworks to furnish the district and inhabitants thereof . . . with an ample supply of water for all uses and purposes public and private with full authority to regulate and control the use, content, distribution, and price thereof in such a manner as is not in conflict with general law". This provision was recodified in 1996 with essentially the same language and is now found at RCW 57.08.005(3). See Laws of 1996, ch. 230, §§ 301, 1703(1).
[6] While the existing legislation dictated that water district operations must be conducive to public health and welfare, the opinion concluded that this simply meant a water district would have the authority to implement a fluoridation ordinance adopted by a county, city, or town in which the district is located. Those entities may have constitutional grants of public health police powers (Const. art. XI, § 11) or may operate under legislatively granted sources of public health authority (e.g., as local health boards under RCW 70.05).
[7] Informal opinion letter from Mary Jo Diaz, Assistant Attorney General, to Al Bauer, Washington State Senator (Mar. 24, 1989).
[8] Your question does not inquire about, and we do not address, the enforcement mechanisms a local health district may utilize.
[9] There may be a variety of rational bases for requiring only a portion of a water system to be fluoridated. A water source may be naturally fluoridated without additional treatment, fluoridation of some water sources might be impracticable or prohibitively expensive, or a particular water source might be only for temporary or intermittent use, making it not cost-effective to fluoridate. We also observe that public agencies generally do not run afoul of any constitutional requirements where they choose to address only a portion of a perceived problem. See Yakima Cy. Deputy Sheriff's Ass'n v. Bd. of Comm'rs for Yakima Cy.,92 Wn.2d 831, 836, 601 P.2d 936, 939 (1979); McDonald v. Bd. of Election Comm'rs, 394 U.S. 802, 89 S. Ct. 1404 (1969). State and local governments are generally free to "approach a problem piecemeal and learn from experience." Deputy Sheriffs Ass'n, 92 Wn.2d at 836.
[10] While the water fluoridation requirement you have referenced takes the form of a resolution and uses the phrase "order" in section 2, it is also characterized as the adoption of a "regulation" in section 1.
[11] RCW 70.05.070 provides additional authority to local health officers. Acting under the direction of the local health board, the health officer may enforce "all local health rules, regulations and ordinances within his or her jurisdiction including imposition of penalties authorized under RCW 70.119A.030 and 70.118.130." RCW 70.05.070(1). Under the direction of the local health board, the health officer may also generally undertake "such measures as he or she deems necessary in order to promote the public health". See RCW 70.05.070(9).
[12] You have not directed us to any Skagit County laws requiring a particular form of legislative enactment.
[13] We assume, consistent with the case law, that the discretionary act of the private third party is rationally connected with the health board's purpose in ordering the water to be treated, and the decision to make the order contingent was not arbitrary or based on improper motives, such as conferring an unearned economic benefit on a private party. For example, we understand that the contingency in Skagit County relates to a third party's willingness to pay the costs of fluoridation.