IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SNOHOMISH HEALTH DISTRICT, a Washington Municipal Corporation, | No. 85966-8-I |
| Respondent, | DIVISION ONE |
| and | UNPUBLISHED OPINION |
| SNOHOMISH COUNTY, a political subdivision of the State of Washington, | |
| Respondent-Intervenor, | |
| v. | |
| JOHN POSTEMA, MARYKE POSTEMA, and MALTBY PRODUCE MARKET, LLC, | |
| Appellants. | |

DÍAZ, J. — Snohomish County and the Snohomish Health District (together, the County) sued John and Maryke Postema and Maltby Produce Market, LLC (the Market) for operating an establishment which sells "temperature-controlled for safety food" without a permit, as required by chapter 246-215 of the Washington Administrative Code (WAC). The superior court granted summary judgment to the County. The Market now claims there are genuine disputes of material fact whether it sells food requiring a permit. It also argues the County violated its due process rights by denying it notice that a former exemption in the local regulatory

code was repealed. Alternatively, the Market avers that, even if summary judgment was properly awarded, we must remand this matter to the trial court because its order is vague or overbroad, and that the court should not have granted injunctive relief because the County failed to prove any consumers were actually harmed. Disagreeing with each argument, we affirm.

## I. BACKGROUND

The Postemas opened the Market in 2003, selling produce from their farmland and a variety of other food products. The Market sells a wide range of items from its orchard, farm, and winery operations including vegetables, herbs, vinegar, and wine. It also sells numerous items which require refrigeration or freezing, such as fresh pasta and frozen fruits and berries, raw cider, hummus, and salsas. Temperature-controlled items account for about 80 percent of the Market's overall sales revenue. Notably, these items include frozen meat from sheep, ducks, cows, and goats. And the Market also sells dairy products, including gallon-sized Darigold milk, which is not ultra-pasteurized, cottage cheese, sour cream, butter, goat cheese, and other blocks of cheeses.

In February 2021, Snohomish Health District staff (the District)[1] notified the

---

[1] Formed in 1959 as an independent special purpose district, Snohomish Health District was, until recently, the local governmental agency responsible for public health in Snohomish County. In December 2022, the District transferred its authority and operations to the newly created Snohomish *County* Health Department. The County replaced the District as the governing public health authority on December 31, 2022, took on the duty to enforce state health statutes and regulations, and, shortly thereafter, Snohomish County intervened as a party. In a February 21, 2025 letter to this court, trial counsel for the District reiterated that the District takes no position and will take no actions in this appeal because it was dissolved and all current issues are handled solely by the County.

Market that its sale of certain food items required it to have a permit under state code. In July 2021, the District health officer issued an administrative order citing the Market for violating state and local regulations because it was a "food establishment" required to have a permit, and directed the Market to cease operations or resolve the violation by obtaining a permit within 30 days.

After its staff returned to the Market in November 2021 and January 2022 and observed it continued to operate without a permit, the District filed a complaint in superior court seeking declaratory and injunctive relief to enforce the administrative order.

In August 2023, the District and Snohomish County filed motions for summary judgment and for injunctive relief. The next month, the court denied the Market's cross-motion to dismiss and granted the County's motion. It found that the Market was "a 'food establishment' selling temperature-controlled food without a valid permit to operate from the local board of health as required under chapter 246-215 WAC." And the court required the Market to "apply for and obtain a valid permit to operate from the local board of health within ninety (90) days of this order" or "immediately cease selling temperature-controlled food until obtaining a valid permit to operate from the local board of health as required under chapter 246-215 WAC." The Market timely appeals the court's decisions.

II.     ANALYSIS

A.     Summary Judgment

The Market contends that summary judgment was improper because there is a genuine dispute of material fact whether it is a "food establishment" required

to have a permit under WAC 246-215-01115(50). It argues the County failed to establish it sells "time/temperature control for safety foods," such that it must have a permit. We disagree.

Summary judgment is appropriate where the materials and evidence in the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); see Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). Washington courts employ a two-step burden-shifting analysis to assess summary judgment motions. TracFone, Inc. v. City of Renton, 30 Wn. App. 2d 870, 875, 547 P.3d 902 (2024). First, the "party moving for summary judgment bears the initial burden of showing that there is no disputed issue of material fact." Haley v. Amazon.com Servs., LLC, 25 Wn. App. 2d 207, 216, 522 P.3d 80 (2022). Second, the "burden then shifts to the nonmoving party to present evidence that an issue of material fact remains." Id.

We review orders on summary judgment de novo. TracFone, 30 Wn. App. 2d at 875. We view all facts and reasonable inferences in the light most favorable to the nonmoving party. Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012). And, while we generally review grants of injunctions for an abuse of discretion, when an injunction "is being reviewed as an appeal from an order granting it in summary judgment and its validity involves only questions of law, our review is de novo." Hoggatt v. Flores, 152 Wn. App. 862, 868, 218 P.3d 244 (2009).

Pursuant to its rulemaking authority under RCW 43.20.050(2)(d) to

4

safeguard public health in food service operations, the Washington Board of Health adopted chapter 246-215 of the WAC, which inter alia establishes definitions and provides for permit issuance and suspension applicable to "food establishments." WAC 246-215-01100, -01105, -01110.[2] Specifically, WAC 246-215-01115(50)(a)-(b) define when an operation is a food establishment. And WAC 246-215-08300 mandates that such establishments must have a valid permit from the regulatory authority to operate.

The definition of a "food establishment" includes a "market" or entity that "provides food for human consumption" to "a consumer directly." WAC 246-215-01115(50)(a). There is no dispute that the Market does that. However, WAC 246-215-01115(50)(c) exempts certain operations from the definition of a food establishment. As both parties note, the only relevant exceptions at issue are for establishments which *exclusively* offer "nontime/temperature control for safety food." WAC 246-215-01115(50)(c)(i), (ii), (iv), (v), (vi).

WAC 246-215-01115(127)(a) defines "time/temperature control for safety foods" as foods "that require[] time/temperature control for safety to limit pathogenic microorganism growth or toxin formation." WAC 246-215-01115(127)(b) and (c) then specify which foods "are include[d]" and which foods are "not include[d]" in this definition, respectively. WAC 246-215-01115(127)(b)(i) states that "animal food that is raw or heat-treated" is included. WAC 246-215-

---

[2] In turn, local health authorities—composed of a local board, department, and a local officer serving as the main enforcement actor—implement and apply the health laws and regulations that the state board adopts. RCW 43.20.050(5); RCW 70.05.010; RCW 70.05.060(1).

01115(127)(b)(ii) then enumerates chemical factors for determining whether other types of foods are included.

Here, the County provided evidence the Market sells animal food under WAC 246-215-01115(127)(b)(i). Specifically, the County attached to its sworn declaration photographs of the Market's products and reports from the local health inspectors describing numerous kinds of animal food the Market sells. For example, a County health specialist reported she observed the following items during a visit to the Market: "frozen meat in a glass display freezer: beef, chicken, sausage links, pork and lamb." The inspector also observed "dairy in a refrigerated case: milk, butter, whipping cream, and yogurt" and "chicken and duck eggs." Thus, the County met its initial burden, as the moving party, to show there is no disputed issue of material fact the Market sells at least one type of food requiring it to obtain a permit, animal food. Haley, 25 Wn. App. 2d at 216.

In response, the Market did not present any evidence to the contrary, i.e., challenging, questioning, or otherwise undermining the County's evidence or putting forth its own evidence that it does not sell animal food. In fact, it did not deny that it sells animal food. It concedes that it sells temperature-controlled items and acknowledged that some of its products include animal food. See Appellant's Corrected Opening Br. at 43 n.70 (noting that the County's evidence serves to "confirm the presence of refrigerated items" at the Market and citing to two declarations in the record with attachments reporting products including "meat in a glass display freezer").

In turn, the Market has not presented any evidence creating a question of

fact about whether it sells *only* non-"temperature control for safety food," which would exempt it from the definition of a "food establishment" under WAC 246-215-01115(50)(c)(i), (ii), (iv), (v), or (vi). Thus, it has not met its burden to show "that an issue of material fact remains," which would preclude summary judgment. Haley, 25 Wn. App. 2d at 216.

Instead, the Market avers that the regulatory framework is "hyper technical," "nuanced," and "far from straightforward." Specifically, it argues that that the County and the court failed to require the "intricate analysis" of the chemical factors listed in WAC 246-215-01115(127)(b)(ii) for the foods the Market sells, including "pH or Aw values, product assessments, or intrinsic/extrinsic factors." It claims the County's suit is premised on the "simplistic" notion that the "Market's sale of refrigerated items automatically classifies the Market as a 'food establishment.'" And the Market criticizes the County's evidence, not for what it put forth, but for failing to include "any allegation or analysis regarding key factors outlined in the regulatory code, such as pH or Aw values, product assessments, or intrinsic/extrinsic factors, or any other analysis contemplated by WAC 246-215-01115(127)(c)."

This argument is a strawman and based on a fundamental misunderstanding of the structure of the statute. Regardless of how the County or the court may have summarized the regulations, we review questions of statutory construction, which includes municipal ordinances, de novo. State v. Votava, 149 Wn.2d 178, 183, 66 P.3d 1050 (2003); Spokane v. Fischer, 110 Wn.2d 541, 542, 754 P.2d 1241 (1988). And it is clear that "time/temperature control for safety

foods" could include foods, as in WAC 246-215-01115(127)(b)(ii), which meet certain scientific thresholds. But WAC 246-215-01115(127)(b)(i) makes equally clear that such an analysis is not required for inter alia "animal food that is raw or heat-treated," which by definition are such foods. To import a requirement to *also* test such foods scientifically would be to add words "to an unambiguous statute when the legislature has chosen not to include that language." State v. Delgado, 148 Wn.2d 723, 727, 63 P.3d 792 (2003); see also State v. Tyler, 191 Wn.2d 205, 218-19, 422 P.3d 436 (2018) (explaining that an "and" in a list of terms may rightly be read disjunctively depending on context).

Thus, while the County could have conducted the chemical analyses under WAC 246-215-01115(127)(b)(ii) on all of the Market's foods, the County satisfied its burden to show at least one type of item in WAC 246-215-01115(127)(b)(i) is sold at the Market, robbing the Market of the exemption it hopes to rely on. In turn, summary judgment was appropriate because the record demonstrates there is no genuine dispute of material fact that the Market was required to obtain a permit. TracFone, 30 Wn. App. 2d at 875.

B.     Due Process

Effective January 1, 2023, a Snohomish County ordinance repealed section 7.12 of the now former Snohomish County Code (SCC), which had previously treated certain "grocery, food market, and meat market[s]," including "roadside stands," as exempt from the permit requirement for "food establishments."[3] From

---

[3] The repealed section 7.12 of the former Snohomish County Code can be found at https://snohomish.county.codes/SCC@2022-12-15/7.12 [https://perma.cc/3LMS-B9RJ].

the time that provision was first adopted in 1962 until its repeal, the Washington State Board of Health made ongoing updates to food safety regulations, and the SCC had incorporated chapter 246-215 WAC by reference.

The Market argues that former SCC 7.12 exempted it from needing to obtain a permit, and that the former provision's repeal without proper notice violated the Market's due process rights under the United States Constitution. The County contends the Market has waived this claim because it did not raise it before the trial court. We agree that the Market did not preserve the claim it now makes on appeal and, even if the Market had not waived the argument, it fails on its merits. We address each in turn.

1. Preservation

An argument neither pleaded nor argued to the trial court generally cannot be raised for the first time on appeal. Wash. Fed. Sav. v. Klein, 177 Wn. App. 22, 29, 311 P.3d 53 (2013); RAP 2.5(a). Moreover, "[o]n review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court." RAP 9.12. The Market has not properly preserved this issue because it did not make the same argument in the trial court that it now makes on appeal.

In its summary judgment briefing before the trial court, the Market did not argue it was denied procedural due process because it received inadequate notice. Instead, it asserted that the local ordinance repealing the former code did not follow technical specifications, which require that any proposed legislation repealing obsolete provisions contain "annotat[ions] so as to show the purposes, reasons,

9

and history thereof." SCC 1.02.060. The term "notice" is absent from the relevant portion of the Market's summary judgment briefing. Nor does the word "notice" appear a single time in its motion to dismiss, which argued the County violated its due process rights because the Market was unable to pursue an administrative appeal prior to this suit.[4]

By contrast, in its appellate briefing, the Market argues that its due process rights were violated because it did not receive sufficient notice from the County that it was repealing the former code and, thus, the Market could not "'prepare intelligently for the hearing.'" (Quoting Chaussee v. Snohomish County Council, 38 Wn. App. 630, 642, 689 P.2d 1084 (1984)) (internal quotation marks omitted). This argument is substantively different from the argument raised before the trial court.

Moreover, as the County noted at oral argument before this court, "had [the argument] been made [before the court] below[,] . . . [this court] would have in the clerk's papers a copy of the County's actual published notice . . . but [this court] do[es]n't. All [this court] ha[s] is a copy of the ordinance." Wash. Ct. of Appeals oral argument, Snohomish Health Dist. and Snohomish County v. Postema, No. 85966-8-I (April 11, 2025), at 11 min., 36 sec. through 11 min., 46 sec. video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-

---

[4] Counsel for the Market did utter the word "notice" three times in passing during the hearing on the County's summary judgment motion. But its counsel used the word generally about the "regulated community," and not in reference to the specific argument it now advances, i.e., regarding its ability to prepare for the hearing.

2025041275/?eventID=2025041275.  We do not have such a record.

Thus, this claim is an issue never "called to the attention of the trial court," which it had no opportunity to consider or rule on.  RAP 9.12.  And, the Market has not argued, let alone established as is its burden, that we should exercise our discretion under RAP 2.5(a) to consider the issue because it involves a manifest error affecting a constitutional right.  State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009).  Thus, the assignment of error has been waived.

2.  Merits

Even if the Market did preserve the argument, we would conclude that it did not establish that its due process rights were violated when the County repealed the former code.

We weigh three factors in assessing an alleged violation of the "fundamental requirement of due process"—i.e., the right to have "the opportunity to be heard at a meaningful time and in a meaningful manner"—namely, (1) "the private interest . . . affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used," and (3) "the Government's interest, including . . . the fiscal and administrative burdens that [an] additional or substitute procedural requirement would entail."  Post v. City of Tacoma, 167 Wn.2d 300, 313, 217 P.3d 1179 (2009) (quoting Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).

As to the first factor, our Supreme Court has held that the private interest at stake is high if it affects a person's physical liberty, In re Det. of Morgan, 180 Wn.2d 312, 321, 330 P.3d 774 (2014), and that purely economic interests tend to weigh

less heavily. See, e.g., Morrison v. Dep't of Labor & Indus., 168 Wn. App. 269, 273-75, 277 P.3d 675 (2012).

As to the second factor, our Supreme Court has held a litigant does not establish a due process violation by simply showing that additional procedures would have decreased the *likelihood* that an interest would have been affected; rather, a party claiming such a violation must show that the extant procedures contain "inadequacies that ma[d]e erroneous deprivations *readily foreseeable*." Hardee v. Dep't of Soc. & Health Servs., 172 Wn.2d 1, 11, 256 P.3d 339 (2011) (emphasis added). There, the court declined to find a due process violation in part because appellant made no such showing. Id.

As to the third factor, courts have routinely recognized protecting the public is an important governmental interest. Post, 167 Wn.2d at 314; In re Det. of Ross, 30 Wn. App. 2d 930, 945, 547 P.3d 278 (2024).

Here, in its reply brief, the Market asserts that its private interest is the "ability to operate its business and the use of its land" and the government's interest is "in enforcing health regulations." With no citation to legal authority, it summarily contends the government's interest does not outweigh "the need for procedural safeguards to ensure fair treatment of the Market," especially because the local code had exempted the Market until the County "silently repealed it."

We weigh its claim applying the Mathews factors, as follows. First, the Market does not have a personal liberty interest, and it is losing not its ability to operate a business or use its land, but only its ability to do so without first obtaining a permit. Without further explanation why the burden on a property interest is

improper, we hold that such an interest should not be given great weight. Morgan, 180 Wn.2d at 321; Morrison, 168 Wn. App. at 273-75. As to the third factor, the government has an important interest in safeguarding the health and safety of the community. Post, 167 Wn.2d at 314; Ross, 30 Wn. App. 2d at 945.

As to the second factor, the Market fails to explain how the County's procedures for repealing the former code made the loss of its property interest "readily foreseeable." Hardee, 172 Wn.2d at 11. As in Hardee, the County had a number of procedural requirements which, it is undisputed, the County followed when adopting the ordinance which repealed the code.

Furthermore, the Market does not identify any particular additional procedure(s) for repealing codes which would have protected it from the loss of its minor economic interest. Its brief claims the council improperly "bypass[ed] review by the Snohomish County Planning Commission," but it does not explain even how such a review would have decreased its risk of harm.

In fact, it is unclear whether any additional notice procedure could have avoided the loss the Market claims to have suffered because it appears state law preempts local exemptions, such as the one the Market asserted. See RCW 70.05.070(1) (requiring local health officers to enforce state rules); see also RCW 70.05.060(3); WAC 246-215-01110(2) (indicating local boards of health are only permitted to adopt different food safety provisions than the state analogues if they are more stringent, not less).

For all of these reasons, even if it did not waive its claim, we conclude the Market has not established a procedural due process violation.

C.    Vagueness and Overbreadth

The Market also argues in the alternative that, even if it does sell certain items that require a permit, we must remand the trial court's order because it is vague and overbroad.

As to vagueness, the Market contends "the term 'temperature-controlled food' as used in the order lacks definitional clarity, raising unconstitutional void for vagueness concerns."  But it cites to no constitutional case law in support.  Such "naked castings into the constitutional sea are not sufficient to command judicial consideration and discussion."  Seven Gables Corp. v. MGM/UA Entertainment Co., 106 Wn.2d 1, 14, 721 P.2d 1 (1986) (quoting United States v. Phillips, 433 F.2d 1364, 1366 (8th Cir. 1970)).

If we were to interpret its claim as a rule-based argument, the Market cites only to two federal circuit court cases addressing Fed. R. Civ. P. 65(d)'s "specificity requirements," and asserts nothing more than that this federal rule is identical to Washington's CR 65(d).  The Market provides no further argument and cites no Washington cases concerning CR 65(d).  "This court will not consider claims insufficiently argued by the parties."  State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990).

Moreover, the Market does not explain how the term "'temperature-controlled food' as used in the trial court's order" is so vague and undefined that it contravenes CR 65(d).  In relevant part, CR 65(d) requires that an order granting an injunction be "specific in terms" and "describe in reasonable detail . . . the act or acts sought to be restrained."  Here, the court used terms directly taken from

14

the applicable regulation—a regulation the order cites—which provides the Market detailed guidance.  WAC 246-215-01115(127)(a)-(c).  The order references the "specific" governing regulation and provides "reasonable detail" that the act being restrained is the Market's continued operation and sale of items without a permit as required by chapter 246-215 WAC.

Moreover, the Market cites no authority requiring a court to include in its order all relevant details from regulations it references.  "'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'"  City of Seattle v. Levesque, 12 Wn. App. 2d 687, 697, 460 P.3d 205 (2020) (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)).  In a different context, we held that "[a] statute is not unconstitutionally vague merely because one cannot predict exactly when his or her conduct would be classified as prohibited."  Regan v. Dep't of Licensing, 130 Wn. App. 39, 51, 121 P.3d 731 (2005).  The same is true here.

Therefore, we reject the contention the order is erroneous for being insufficiently specific.[5]

D.      Injunctive Relief

The Market argues that, even if the County properly prevailed on summary judgment, the court erred in granting injunctive relief because the County showed only that the Market operated without a permit but did not prove it carried or sold

---

[5] The Market offers no separate argument for overbreadth.  Thus, we do not consider that claim.  Elliott, 114 Wn.2d at 15.

15

items that were actually unsafe to consume or caused any customer physical harm.  Such a showing was not necessary.

To obtain permanent injunctive relief, a party generally must establish: (1) a clear legal or equitable right, (2) a well-grounded fear of immediate invasion of that right, and (3) that the act complained of will result in actual and substantial injury.  Huff v. Wyman, 184 Wn.2d 643, 651, 361 P.3d 727 (2015).

As to the third element, our legislature has not defined food permit violations as per se nuisances, but it conveys considerable discretion to local health officers who must enforce all state and local public health rules.  RCW 70.05.070(1).  The legislature mandates that local health authorities exercise their authority to "[p]revent, control or abate nuisances which are detrimental to the public health."  RCW 70.05.070(5) (emphasis added).  And the legislature grants local authorities broad power to "[e]nact such local rules and regulations as are necessary in order to preserve, promote and improve the public health and provide for the enforcement thereof."  RCW 70.05.060(3) (emphasis added).

In exercising this power, the Snohomish County Board of Health has declared that "[a]ll violations of Health Code are determined to be detrimental to the public health, safety, and welfare and are hereby declared to be public nuisances."  Snohomish County Ordinance No. BOH23-01, at 5-6 (Oct. 10, 2023) (emphasis added), https://www.snohd.org/DocumentCenter/View/13759/Ordinance-BOH23-01-Adopting-the-Board-of-Health-Code [https://perma.cc/7S7A-RWS3].

We review questions of statutory construction de novo.  In re Parentage of

C.A.M.A., 154 Wn.2d 52, 57, 109 P.3d 405 (2005). But, "[b]ecause protecting and preserving the health of its citizens from disease is an important governmental function, public health statutes and the actions of local health boards implementing those statutes are liberally construed." Spokane County Health Dist. v. Brockett, 120 Wn.2d 140, 149, 839 P.2d 324, 329 (1992) (citing Snohomish County Builders Ass'n v. Snohomish Health Dist., 8 Wn. App. 589, 595, 508 P.2d 617 (1973)).

The Market's argument fails for five reasons.

First, the governing statutory language does not specify, as the Market urges, that the Board of Health may only act to redress nuisances that are found to have caused actual harm. That is, the legislature has not declared that only "nuisances" found *in fact* to be "detrimental to the public health" are redressable by injunction. RCW 70.05.070(5). "We cannot add words or clauses to an unambiguous statute when the legislature has chosen not to include that language." Delgado, 148 Wn.2d at 727. In other words, the legislature could have chosen to include the words "in fact" in its articulation of nuisances "detrimental to the public health," but it did not. We will not do so here.

Second, RCW 70.05.070(5) requires that local authorities "*prevent* . . . nuisances detrimental to the public health," which contemplates injuries that may have not yet occurred. (Emphasis added.) Because "'each word of a statute is to be accorded meaning,'" we must interpret the statute to including a requirement to address harm that may happen in the future. State v. Roggenkamp, 153 Wn.2d 614, 624, 106 P.3d 196 (2005) (quoting State ex rel. Schillberg v. Barnett, 79 Wn.2d 578, 584, 488 P.2d 255 (1971)).

Third, we must read the particular phrase "nuisances detrimental to the public health" within "'the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'" Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010) (quoting State v. Engel, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009)). The statutory scheme authorizes local health boards to enact rules to "preserve, promote, and improve the public health and provide for the enforcement thereof." RCW 70.05.060(3). This language conveys power that is plainly more expansive than the authority only to respond to harm that already occurred, but to create conditions favorable to avoiding harm in the first place.

Fourth, our Supreme Court has held that "the failure to obtain a particular type of permit could be a nuisance per se if declared to be so by the legislature or found to be so by this court." Moore v. Steve's Outboard Serv., 182 Wn.2d 151, 156, 339 P.3d 169 (2014). There, the court held that the failure to obtain the particular permit at issue (to operate a motor repair shop) was not a nuisance per se, in part, because "no case, statute, or ordinance has been drawn to our attention that would specifically make the failure to obtain some relevant permit a nuisance." 182 Wn.2d at 156; see id. at 157-58 (noting that plaintiffs "point to no provision of … any … applicable regulatory scheme that transforms the failure to obtain a permit into a nuisance per se"). Here, in contrast, the County has brought to this court's attention a statute and ordinance which—when read together and "liberally"—make the failure to obtain the relevant permit a nuisance per se, namely, RCW 70.05.070(1) and Ordinance No. BOH23-01. Brockett, 120 Wn.2d

18

at 149.  Thus, <u>Moore</u>, which the Market relies on, is distinguishable.

Fifth and finally, the Market newly contends in its reply brief that the ordinance conflicts with state law by treating regulatory noncompliance as nuisance per se without any requirement to establish demonstrable harm.  It argues there is a "direct" and "irreconcilable conflict" since the local code permits what "state law forbids" because the legislature intended to limit the exercise of local authority to abating nuisances which are, *in fact*, "detrimental to public health."  To accept this argument would be to read words into the governing statutory law which the legislature did not include.  <u>Delgado</u>, 148 Wn.2d at 727.  We will not do so and, thus, no conflict exists.[6]

Thus, the court properly granted injunctive relief based on the risk of injury.

### III.    CONCLUSION

We affirm.

Díaz, J.

WE CONCUR:

Chung, J.

, ACJ

---

[6] In addition, our Supreme Court has held that a local regulation is not invalid on the ground that it conflicts with a statute "if the [allegedly contradictory] provisions can be harmonized." <u>Parkland Light & Water Co. v. Tacoma-Pierce County Bd. of Health</u>, 151 Wn.2d 428, 433, 90 P.3d 37 (2004).  Here, the ordinance can be reconciled with the governing statutes because, as noted above, the statutes permit local boards to enact preventative health laws, not only reactive ones, and indeed contemplate and allow regulations that are more stringent than the WACs. RCW 43.20.050; WAC 246-215-01110(2) ("When a local board of health adopts rules with more stringent provisions than those contained in this chapter, the more stringent rules apply.").  The provisions are so harmonized.